IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No.: 3:11-cv-00597

THE FAIRPOINT COMMUNICATIONS, INC.
ET AL. LITIGATION TRUST

                       Plaintiff,

  - v. -

VERIZON COMMUNICATIONS, INC.,
NYNEX CORPORATION, VERIZON NEW
ENGLAND, INC., AND VERIZON
INFORMATION TECHNOLOGIES, L.L.C.,

                       Defendants.

**REPLY MEMORANDUM IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS
THE SECOND AMENDED COMPLAINT**

## TABLE OF CONTENTS

                                        **Page**

I.  THE TRUST CANNOT RECOVER THE CASH VALUE OF NOTES THAT SPINCO NEVER TRANSFERRED TO VERIZON .......................................................... 1

  A.  Spinco Did Not Transfer Any Interest In Property To Verizon ............................ 2

  B.  There is No "Equitable" Basis on Which to Ignore the Law ................................ 3

II.  NONE OF THE TRUST'S ALLEGATIONS STATE A CLAIM FOR AN ACTUAL FRAUDULENT TRANSFER ........................................................................ 4

III.  THE TRUST CANNOT RECOVER PUNITIVE DAMAGES ......................................... 6

IV.  THE TRUST FAILS TO STATE A CONSTRUCTIVE FRAUDULENT TRANSFER CLAIM BASED ON THE TSA PAYMENTS ........................................... 7

CERTIFICATE OF COMPLIANCE ........................................................................................... 11

CERTIFICATE OF SERVICE .................................................................................................... 12

## I. THE TRUST CANNOT RECOVER THE CASH VALUE OF NOTES THAT SPINCO NEVER TRANSFERRED TO VERIZON

The Trust's opposition is based on a single faulty premise: that Spinco transferred property to Verizon when the Spinco Notes were issued. That is not what happened. In fact, Spinco only incurred an obligation. The Trust concedes that under the Bankruptcy Code a trustee may "recover" property or its value only if there is a "transfer of an interest of the debtor in property." 11 U.S.C. § 550(a); Opp. at 6. If instead the debtor incurs an ***obligation*** to pay a debt, the Code allows only for the debtor to "avoid" that obligation. Because Spinco simply issued the notes to Verizon in exchange for the assets it acquired, it never obtained an "interest" in any proceeds from the Spinco Notes. And because Spinco "transferred" no property, there is nothing to recover.

Faced with very similar fraudulent transfer claims stemming from the Idearc bankruptcy, the district court there recently dismissed those claims on a Rule 12(b)(6) motion for precisely this reason. *U.S. Bank Nat'l Assoc. v. Verizon Comm., Inc., et al.*, No. 3:10-CV-1842, 2012 WL 3100778 (N.D. Tex. July 31, 2012) ("*Idearc")* (attached as Ex. A). There, as here, the debtor had issued debt to Verizon as partial payment for assets acquired as part of a spin-off transaction. As here, the trustee argued that the issuance of notes and other debt to Verizon was a transfer of the debtor's property, and thus entitled the trustee to recover the cash value of the debt under Section 550 of the Bankruptcy Code. The court decisively rejected that argument, holding that "[w]hen a debtor issues a note or makes a guarantee, it incurs an obligation; it does not transfer any property." *Idearc*, 2012 WL 3100778 at *5 (*citing In re MacMenamin's Grill Ltd.*, 450 B.R. 414, 429 (Bankr. S.D.N.Y. 2011)). Because "a debtor can recover under Section 550 for transfer of property, [but] it cannot recover under Section 550 for an obligation incurred," the court dismissed the trustee's fraudulent transfer claims seeking to recover the $7.1 billion in debt. *Id.*

at *4 (*citing In re Asia Global Crossing, Ltd.,* 333 B.R. 199, 202 (Bankr. S.D.N.Y.2005)). The same result is compelled here.

### A. Spinco Did Not Transfer Any Interest In Property To Verizon

Under well-settled law, when Spinco issued its notes it incurred an obligation; it did not transfer any property. *See Idearc* at *5-9; *Covey v. Commercial Nat'l Bank*, 960 F.2d 657, 661 (7th Cir. 1992) ("[A] note or guarantee is not a 'transfer' for purposes of 11 U.S.C. §101(54) . . . , [but] both [a] note and guarantee are obligations."); *Don E. Williams Co. v. Comm'r*, 429 U.S. 569, 582-83 (1977) ("[A] promissory note, even when payable on demand and fully secured, is still, as its name implies, only a promise to pay, and does not represent the paying out or reduction of assets."). And, as the Trust concedes, even if an obligation is fraudulently incurred, the only remedy the Bankruptcy Code provides is avoidance of the obligation—not "recovery" of the face value of the debt. *In re Foxmeyer Corp.*, 290 B.R. 229, 234 (Bankr. D. Del. 2003) ("[E]ven if the same is avoidable as a fraudulent conveyance, [a guarantee obligation] cannot result in any recovery to the Trustee under § 550(a)(1) given that only transfers of property are remediable under § 550(a)(1).")

Not one of the cases cited by the Trust supports its claim that a debtor's issuance of debt to a defendant is a transfer of property. Instead, in each of those cases, the debtor borrowed cash from a third-party lender and then transferred that money (*i.e.*, the loan proceeds) to the defendant. *See In re Moses*, 256 B.R. 641, 645 (B.A.P. 10th Cir. 2000); *In re Marshall*, 550 F.3d 1251, 1256 (10th Cir. 2008); *In re Ohio Bus. Machs., Inc.*, No. 06-8005, 2007 WL 177941, at *2 (B.A.P. 9th Cir. Jan. 25, 2007). Here, by contrast, there was no transfer of loan proceeds ***because there were no loan proceeds to transfer***. Spinco issued notes directly to Verizon and the "proceeds" that Spinco received in exchange were the Verizon landlines, not cash. (SAC at ¶¶ 107*;* 1.)

2

The Trust tries to analogize *In re Appleseed's Intermediate Holdings, LLC*, 470 B.R. 289, 298-99 (D. Del. 2012), to this case, trumpeting that the issuer of the notes in *Appleseed's* never actually received the proceeds of the loan, but instead directed the lender to pay the proceeds directly to its parent as a dividend. *Id.* at 299. But physical control over the note proceeds is not the issue here, as Spinco did not transfer note proceeds to Verizon, it issued notes. Spinco chose to finance part of the Transaction by issuing notes directly to Verizon, rather than obtaining funds from a lender and paying Verizon cash. (SAC at ¶ 108.) Accordingly, Spinco never had any "note proceeds" to transfer to Verizon.

### B. There is No "Equitable" Basis on Which to Ignore the Law

Recognizing that the text of the Bankruptcy Code forecloses its claim, the Trust, relying on testimony and documents that are not included in any of the three complaints it has filed to date, calls upon "equity," arguing that in "substance and economic reality," Verizon received "Spinco Bond proceeds" when Verizon subsequently transferred the notes to investment banks for value (*i.e.*, cancellation of debt). (SAC at ¶ 107; Opp. at 9.)

The Trust does not identify any authority that permits the Court to disregard the actual transaction that took place and instead analyze a different transaction that never occurred. To the contrary, the court in *Idearc* rejected precisely this argument out of hand. There, as here, the Trust "urge[d] the court to '[look] through the machinations of the Verizon structure to the practical effect of the transactions involved in the Spin-off, [as] the net result is that (among other things) Idearc effectively borrowed $7.1 billion and transferred it to Verizon.'" 2012 WL 3100778, at *7. The *Idearc* court refused to engage in this fiction, explaining that "the extant case law demonstrates that the ... unsecured notes ... are obligations—not property. As a result, Section 550 does not provide a means of recovery of that debt from the defendants. The court will not use its 'equitable jurisdiction' to circumvent the Bankruptcy Code[.]" *Id.*

3

And, no matter how broadly a "transfer of an interest in property" is read, it cannot alter the fact that Spinco incurred only an obligation when it issued the notes to Verizon and did not transfer any property directly or "indirectly." It is irrelevant that Verizon subsequently transferred the Spinco Notes to several banks and received value in return. (SAC ¶ 107; Opp. at 9.) Under fraudulent transfer law, the issue is not what Verizon received in some subsequent transaction, but what the debtor gave up in the transaction at hand. *See In re Jeffrey Bigelow Design Grp., Inc.,* 956 F.2d 479, 484 (4th Cir. 1992) ("[T]he proper focus is on the net effect of the transfers on the debtor's estate."); *Idearc* at *5-9 (declining to accept plaintiff's position that "the debt effectively becomes property when it is transferred to a third party").

Invoking the "collapsing doctrine" cannot salvage Plaintiff's claim either. In certain circumstances the collapsing doctrine permits courts to collapse multiple steps of a transaction when determining whether the transaction as a whole was a fraudulent transfer. However, as a matter of law, that doctrine cannot transform the incurrence of an obligation into a transfer of property for purposes of Section 550. *See Idearc*, at *9 (finding "collapse" cases inapplicable).

The simple fact, as the SAC's allegations make clear, is that the debtor incurred a debt as partial payment for the assets it purchased. Even if that obligation had been fraudulently incurred, the only remedy available under the Bankruptcy Code is to avoid the obligation. The Bankruptcy Code does not permit the Trust to recover a monetary judgment from Verizon for the debt obligation incurred by Spinco. The Trust's claims based on the Spinco Notes (Claims I and II) fail as a matter of law.

## II. NONE OF THE TRUST'S ALLEGATIONS STATE A CLAIM FOR AN ACTUAL FRAUDULENT TRANSFER

The Trust utterly fails to articulate any meaningful theory of actual fraud against FairPoint, Spinco, or Verizon, let alone point to factual allegations that could reasonably support a plausible inference of fraudulent intent, as it must to withstand a motion to dismiss. *In re*

4

*Refco, Inc., Sec. Litig.*, No. 07 MDL 1902 GEL, 2009 WL 7242548, at *8 (S.D.N.Y. Nov. 13, 2009). Instead, the Trust claims that actual fraudulent transfer is a "misnomer," essentially conceding that it has not pled evidence of actual fraud. (Opp. at 16.) The lists of allegations that the Trust cites in the opposition cannot save the claim because the Trust never explains how any of those allegations support any plausible inference of intent to hinder, defraud or delay FairPoint's creditors. Even superficial scrutiny reveals that the Trust's allegations support no such inference as to any of the entities involved.[1]

*First*, while the SAC challenges the reasonableness of the projections FairPoint prepared, charging that FairPoint's management had "little experience" preparing such projections, (Opp. at 20-21), it does not allege that the projections were prepared in bad faith or that FairPoint's management intentionally created false projections. Rather, it alleges only that FairPoint's management was "uninformed" or "wildly optimistic."[2] (SAC at ¶ 46.) Optimism and ignorance are not fraud and do not plausibly suggest an intent to hinder, delay or defraud.

*Second*, the Trust never explains how its allegations that "FairPoint was compelled to close the Transaction or immediately face bankruptcy" support any kind of intent to hinder or delay creditors. (Opp. at 20.) The allegations actually suggest just the opposite, since the Trust claims that FairPoint went ahead with the Transaction as a way to *avoid* bankruptcy. Indeed, the

---

[1] The actions Spinco took were mandated by the Merger and Distribution Agreements, not by Verizon. Regardless, the most the Trust alleges is that "Verizon wanted to close the Transaction even if it meant hindering, delaying or defrauding FairPoint/Spinco's creditors." (Opp. at 24.) Not only is that sentence unsupported by anything in the SAC, Verizon's alleged *indifference* to the fate of FairPoint/Spinco's creditors is not the same as an *intent* to hinder, delay or defraud them.

[2] Similarly, generic allegations that Verizon's projections were less optimistic than FairPoint's are not legally sufficient to show that FairPoint's projections were prepared with the intent to hinder, defraud or delay its creditors. Nor do alleged differences in Verizon and FairPoint's financial projections show Verizon's fraudulent intent without pleading something more.

Transaction enabled FairPoint to pay its existing creditors in full. (SAC at ¶ 106.) Nor do FairPoint's financial problems suggest any intent to hinder, delay or defraud future creditors, because FairPoint's good faith projections predicted that it would be able to pay its creditors in full.

***Third***, the Trust's assertions that FairPoint intentionally misrepresented the assets it was acquiring and that Verizon intentionally misrepresented the performance of those assets are unsupported and conclusory. (Opp. at 21-22.) For its part, FairPoint disclosed exactly what assets it was acquiring when it released the Merger and Distribution Agreements to the public at the time of the deal announcement. (SAC at ¶¶ 59-62.) And Verizon's alleged unwillingness to share material ***non-public*** information with FairPoint, (*see id*. at ¶ 127), does not suggest fraudulent intent.

Because no allegations plausibly suggest that FairPoint, Spinco, or Verizon acted with fraudulent intent, the Trust's actual fraudulent transfer claim (Count II) should be dismissed.

## III. THE TRUST CANNOT RECOVER PUNITIVE DAMAGES

The Trust acknowledges that punitive damages "may not be an available remedy under Section 550 of the [Bankruptcy] Code," but nevertheless presses its claim for punitive damages by asserting it has "pled recovery in the alternative 'under . . . other applicable state or federal law.'" (Opp. at 25.) The Trust is not free to make such an election. Instead, the Trust's "remedies ***are limited*** to those provided for under § 550 of the Bankruptcy Code." *In re Lexington Oil & Gas Ltd.*, 423 B.R. 353, 376 (Bankr. E.D. Okla. 2010) (emphasis added); *In re Tronox Inc.*, 429 B.R. 73, 111 (Bankr. S.D.N.Y. 2010).

The two bankruptcy court opinions that the Trust cites, both from Texas courts, do not change this conclusion. (Opp. at 26 (*citing In re Pace*, 456 B.R. 253 (Bankr. W.D. Tex. 2011);

6

*In re Advanced Modular Power Sys.*, 413 B.R. 643 (Bankr. S.D. Tex. 2009).)[3] In fact, they are contrary to the overwhelming weight of authority. *See In re Tronox*, 429 B.R. at 111 ("Section 550 bars punitive damages notwithstanding their possible availability under state law."); *In re First Independence Capital Corp.*, 181 F. App'x 524, 530 (6th Cir. 2006) (ability to recover under state law "irrelevant" to recovery under Section 550); *In re Martin*, No. 08-52631, 2011 WL 6130422, at *12 (Bankr. E.D. Tenn. Dec. 8, 2011); *In re Allou Distrib., Inc.*, 446 B.R. 32, 65 (Bankr. E.D.N.Y. 2011); *In re Lexington*, 423 B.R. at 375-76; *Hyundai Translead, Inc. ex rel. Estate of Trailer Source, Inc. v. Jackson Truck & Trailer Repair Inc.*, 419 B.R. 749, 760-61 (M.D. Tenn. 2009); *In re Myers*, 320 B.R. 667, 670-71 (Bankr. N.D. Ind. 2005); *In re Brentwood Lexford Partners, LLC*, 292 B.R. 255, 275 (Bankr. N.D. Tex. 2003).

As these cases caution, "the court cannot invoke state law remedies to circumvent or undermine the specific remedy legislated by Congress for the avoidance of a fraudulent transfer." *In re Brentwood*, 292 B.R. at 275. Where Congress intended a party to have the choice of applying either state or federal law under the Bankruptcy Code, it explicitly granted that party such authority. *See, e.g.*, 11 U.S.C. § 522(b)(3) (allowing debtor to elect to exempt property under either state or federal law). Here, where the Code does not grant such an election, it should not be implied judicially. *See Doe v. Chao*, 306 F.3d 170, 178 (4th Cir. 2002).

### IV. THE TRUST FAILS TO STATE A CONSTRUCTIVE FRAUDULENT TRANSFER CLAIM BASED ON THE TSA PAYMENTS

The Trust does not even attempt to establish that the TSA payments were viable stand-alone fraudulent transfers, in effect acknowledging that it cannot state a constructive fraudulent

---

[3] In the only case that awarded exemplary damages, *In re Advanced Modular*, the damages were not based solely on fraudulent transfer but were also a product of "(a) Spoliation of evidence; (b) Breach of fiduciary duty and usurpation of business opportunities; (c) Conversion of estate property; (d) Turnover of property of the estate; [and] (e) Unauthorized post-petition transfers." 413 B.R. at 681.

transfer claim based on these payments alone. *See, e.g.*, *In re CareAmerica*, 409 B.R. 346, 353-54 (E.D.N.C. 2009) (dismissing constructively fraudulent conveyance claim where plaintiff failed to allege factual content showing a lack of reasonably equivalent value).[4] This is not surprising as the SAC is devoid of any facts supporting an inference that the essential transition services FairPoint received under the TSA were worth less than the amount paid for them to Verizon's subsidiary, VIT. The Trust's only attempt to keep the TSA transfer claim alive is to make a conclusory assertion that the "collapsing doctrine" applies, claiming that the TSA payments "must be viewed as part of the overall Transaction." (Opp. at 27.) But the collapsing doctrine cannot be applied to pool the payments to VIT under the TSA on the one hand, and the payments to Verizon for the Transaction on the other, as those payments were made to different entities, at different times, in exchange for markedly different sets of assets and services.

The TSA Payments were monthly fees paid to VIT for "critical functions such as internal information technology, customer care, order management, broadband help desk support, E-911 services, network monitoring, billing and collection, and supply chain systems" delivered to FairPoint post-closing. (SAC at ¶ 128.) FairPoint continued to make payments under the TSA to VIT for nearly a year after Closing. (*Id.* at ¶¶ 133-34.) And, in fact, the amount of the future TSA Payments was unknown at Closing, because the date of "cutover" from Verizon IT systems to the newly designed and built FairPoint systems could be extended under the TSA. (*Id.* at ¶¶ 127-34.). What the Trust seeks to do here—collapse post-closing payments received by a Verizon subsidiary for the services it provided to FairPoint into the purchase price received by Verizon for its landline business—goes far beyond the leveraged buyout context in which this

---

[4] The Trust's claim for actual fraud based on the TSA payments (Count II) must also be dismissed. The SAC nowhere alleges that FairPoint acted with the requisite intent to hinder, delay, or defraud its creditors in making post-closing payments under the TSA in exchange for the "critical" transition services necessary to run FairPoint's business. (*See* SAC at ¶ 128.)

8

equitable doctrine has been applied. *See In re Jevic Holding Corp.*, Bankr. No. 80-11006, 2011 WL 4345204, at *7 (Bankr. D. Del. Sept. 15, 2011) (applying the collapsing doctrine in a leveraged buyout of the debtor where each transaction in the series followed from—and indeed replaced—the previous one, involved the same assets, and was allegedly part of one scheme to acquire the debtor). Because the TSA Payments were made in exchange for indisputably valuable and necessary services—and were not either in consideration for Verizon's landline business in northern New England or mere gratuitous transfers— there is no basis to "collapse" the TSA Payments into the transfers made in exchange for the landline business. *See in re M. Fabrikant & Sons, Inc.,* 394 B.R. 721, 731-32 (S.D.N.Y. 2008) (To collapse transactions, a party must establish, *inter alia*, that "the consideration received from the first transferee [was] reconveyed by the debtor for less than fair consideration or with actual intent to defraud creditors."). Accordingly, Count I of the SAC should be dismissed with respect to the TSA.

Respectfully submitted,

Dated: August 13, 2012
Charlotte, North Carolina

          s/ Robert E. Harrington
Robert E. Harrington
N.C. Bar No. 26967
**ROBINSON, BRADSHAW & HINSON, P.A.**
101 North Tryon Street, Suite 1900
Charlotte, NC 28246
Phone: 704-377-8387
Facsimile: 704-373-3987
rharrington@rbh.com

*Attorneys for Defendants*

*ADMITTED PRO HAC VICE: (OF COUNSEL)*

Lee Ann Stevenson
Matthew F. Dexter
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, NY 10022
Phone: 212-446-4917
Facsimile: 212-446-6460
leeann.stevenson@kirkland.com
matthew.dexter@kirkland.com


Craig Goldblatt
Danielle Spinelli
**WILMER CUTLER PICKERING HALE AND DORR LLP**
1875 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Phone: 202-663-6000
Facsimile: 202-663-6363
craig.goldblatt@wilmerhale.com
danielle.spinelli@wilmerhale.com

## CERTIFICATE OF COMPLIANCE

Pursuant to the Case Management Order entered on March 21, 2012 in this action, counsel for Defendants certifies that the foregoing reply memorandum of law in support of this dispositive motion is less than 3,000 words (excluding the case caption, table of contents, certificates of counsel and signature block) as reported by the word processing software in which it was prepared.

This 13th day of August, 2012.

s/ Robert E. Harrington
Robert E. Harrington

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was electronically filed today using the Court's CM/ECF system which will electronically notify the following counsel of record:

      Jonathan D. Sasser
      James M. Weiss
      **ELLIS & WINTERS LLP**
      PO Box 33550
      Raleigh, North Carolina 27636
      jon.sasser@elliswinters.com
      jamie.weiss@elliswinters.com

      J. Wiley George
      Robin Russell
      Charles B. Hampton
      Scott Locher
      **ANDREWS KURTH LLP**
      600 Travis, Suite 4200
      Houston, Texas 77002
      wileygeorge@andrewskurth.com
      rrussell@andrewskurth.com
      champton@akllp.com
      slocher@akllp.com

      Paul N. Silverstein
      **ANDREWS KURTH LLP**
      450 Lexington Avenue
      New York, New York 10017
      paulsilverstien@andrewskurth.com

This 13th day of August, 2012.

                                                  s/ Robert E. Harrington
                                                Robert E. Harrington