UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Charlotte Division
Civil Action No. 3:11-cv-00597-FDW-DCK

| | |
|---|---|
| THE FAIRPOINT COMMUNICATIONS, INC. *ET AL.* LITIGATION TRUST,<br><br>Plaintiff,<br><br>vs.<br><br>VERIZON COMMUNICATIONS, INC., NYNEX CORPORATION, VERIZON NEW ENGLAND, INC., AND VERIZON INFORMATION TECHNOLOGIES L.L.C.,<br><br>Defendants. | |

### PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S JURY DEMAND

Plaintiff files this Response to Defendants' Motion to Strike Plaintiff's Jury Demand. In support, Plaintiff respectfully shows the Court as follows:

### INTRODUCTION

Plaintiff's fraudulent transfer claims seeking money damages are legal in nature. *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 42 (1989). As such, this lawsuit is one at common law for which the Seventh Amendment jury trial right attaches. *Id.* at 56. Plaintiff's Constitutional right to a jury trial can be denied only if Plaintiff's claims litigate "public rights," which they do not.

HOU:3247054.6

In the bankruptcy context, a "legal claim" may become a "public right" claim only if it stems from the bankruptcy itself or would necessarily be resolved as part of the claims allowance process. *Id.* at 57-58; *Stern v. Marshall*, 131 S. Ct. 2594, 2611, 2618, 2620 (2011). Defendants avoid this test for the obvious reason. Instead, they rely on cases where proofs of claim were pending and avoidance actions needed to be resolved for the pending claims-allowance process. This case is much different.

Here, Defendants' proofs of claim were *resolved* by stipulation. There is no pending "process" involving them. Moreover, FairPoint never even objected to Defendants' claims based on this action or any other grounds. FairPoint paid Defendants for their allowed claims. Finally, Plaintiff is not asserting fraudulent transfer claims in response, or as an objection to, Defendants' proofs of claim. The Complaint does not even mention the proofs of claim.

Defendants cite no case denying a litigant its Seventh Amendment right in circumstances present here. Well settled U.S. Supreme Court authority, *Granfinanciera* and *Stern*, make clear that Defendants' motion to strike this fundamental, constitutionally protected right to a jury trial should be denied.

## ARGUMENT AND AUTHORITIES

The Seventh Amendment preserves rights to a jury trial in "suits at common law" where the value in controversy exceeds twenty dollars. U.S. Const. amend. VII. The jury trial right applies equally to statutory rights that are analogous to suits at common law. *Granfinanciera*, 492 U.S. at 42. Because the right of jury trial is a

basic and fundamental feature of our system of federal jurisprudence, courts should "jealously guard[]" the sacred Seventh Amendment right. *Jacob v. New York*, 315 U.S. 752, 752-53 (1942). Every reasonable presumption should be indulged in favor of the jury trial right. *See Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393 (1937) (presumption against waiver); *Stern*, 131 S. Ct. at 2618 (presumption in favor of Article III court).[1]

### A. This Case Concerns Legal Rights Only.

The Supreme Court has interpreted the Seventh Amendment's phrase "[s]uits at common law" to refer to suits pursuing legal rights, as opposed to ones pursuing solely equitable rights. *Granfinanciera*, 492 U.S. at 41. To determine if a suit seeks legal or solely equitable rights, a court ordinarily must go through a two-stage inquiry: First, it compares the action to 18th century actions brought in English courts before the merger of law and equity courts; and second, it examines whether the remedy sought is legal or equitable in nature. *Id* at 42.

This Court, though, need not ponder those inquiries. The U.S. Supreme Court has provided the answer. The Court in *Granfinanciera* held that statutory fraudulent transfer actions are <u>legal</u> in nature and covered by the Seventh Amendment. *Id*. at 48 (holding "all doubt" is removed "that respondent's cause of

---

[1] Whether the Seventh Amendment permits Congress to assign adjudication to a tribunal that does not employ juries as factfinders "requires the same answer as the question whether Article III allows Congress to assign adjudication of that cause of action to a non-Article III tribunal." *Granfinanciera*, 492 U.S. at 53; *In re Texas General Petroleum Corp.*, 52 F.3d 1330, 1335 (5th Cir. 1995) (quoting *Granfinanciera*).

action should be characterized as legal rather than as equitable").[2]  Plaintiff seeks money damages far exceeding twenty dollars.  The two-stage inquiry for bringing this case within the Seventh Amendment is satisfied.

**B.    Plaintiff's Legal Claims Are Not Transformed Into "Public Rights."**

The lone exception to the Seventh Amendment's guarantee of a jury trial for Plaintiff's legal claims is if they assert "public rights." *Id*. at 51 ("Congress may only deny trials by jury in actions at law . . . in cases where 'public rights' are litigated.").

### 1.    The "public right" test.

To become a "public rights" case, this case must be "closely integrated into a public regulatory scheme" and be one Congress validly has assigned to a non-Article III tribunal. *Id*. at 54.  If it "is not closely intertwined with a federal program Congress has power to enact," then the Seventh Amendment's guarantee of a jury trial remains intact. *Id*. at 54-55.

In the bankruptcy context, a "legal claim," such as Plaintiff's fraudulent transfer claims, may become a "public right" claim only in "limited circumstances," if the action stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process. *Stern*, 131 S. Ct. at 2618; *Granfinanciera*, 492 U.S. at 57-58.

The U.S. Supreme Court has made clear that although a plaintiff's right to assert and recover on fraudulent transfer claims emanates in part from the

---

[2] *See also, e.g., Picard v. Katz*, 825 F. Supp. 2d 484, 486 (S.D.N.Y. 2011) ("The Supreme Court has already found that actions to avoid fraudulent transfers are legal and assert private rights.") (citing *Granfinanciera*).

Bankruptcy Code that does not make it a "public right" case. *Granfinanciera*, 492 U.S. at 55-56 ("[A] bankruptcy trustee's right to recover a fraudulent conveyance under 11 U.S.C. § 548(a)(2) seems to us more accurately characterized as a private rather than a public right. . . . They therefore appear matters of private rather than public right").

Thus, this Court need determine only the following: Is this case part of a claims-allowance process and would it necessarily be resolved in that process? The answer is clearly "no."

### 2. The mere filing of a proof of claim by Defendants did not transform this action to a "public right" action.

Defendants argue that their mere filing of proofs of claim transforms this case against them to a "public right" one. That is not the law.

Courts consistently have held that the filing of a proof of claim alone does not itself transform a "legal" claim into an equitable claim. *Germain v. Conn. Nat'l Bank*, 988 F.2d 1323, 1330 (2d Cir. 1993) (recognizing that "neither precedent nor logic supports the proposition that either the creditor or the debtor automatically waives all right to a jury trial whenever a proof of claim is filed"); *Picard*, 825 F. Supp. 2d at 486 (same); *In re Moye*, 2009 WL 4823998, at *2 (Bankr. S.D. Tex. Dec. 9, 2009) ("Courts have tied the loss of the jury trial right to claim administration rather than to the mere filing of a proof of claim."); *In re Thigpen*, 2004 WL 6070299, at *4 (Bankr. S.D. Ala. Aug. 2, 2004) (rejecting argument that filing a proof of claim alone causes waiver of jury trial right). *See also In re Freeway Foods*, 449 B.R. 860, 884-87 (Bankr. M.D.N.C. 2011) (filing of proof of claims did not cause

waiver of jury trial right as to claims that "had nothing to do" with proof of claim). *Stern* itself illustrates this point, because in *Stern*, Pierce Marshall, the defendant, had filed a proof of claim that the bankruptcy court had denied. *Stern*, 131 S. Ct. at 2617.

Consistent with *Stern* and *Granfinanciera*'s holdings, many courts have required that the action be directly related to the proof of claim in order for it to be considered part of the claims allowance process. If not, they honor the jury trial right. *See, e.g., Riederer v. Kutak Rock, LLP (In re Brooke Corp.)*, ___ B.R. ___, 2011 WL 4971503, at *4 (Bankr. D. Kan. Sept. 14, 2011) (publication forthcoming) ("filing of a proof of claim constitutes a waiver of the right to jury trial only as to issues directly involved in the claims allowance process."); *Freeway Foods*, 449 B.R. at 882-87 (parsing through all claims to determine whether each claim had anything to do with the plaintiff's proof of claim, concluding only two did, and thus concluding that a jury trial right strongly favored remand); *Mirant Corp. v. Southern Co.*, 337 B.R. 107, 121 (N.D. Tex. 2006) (concluding that determining "the legal claims in this action simply will not directly implicate the bankruptcy claim resolution process"); *Johnson v. Williamson*, 369 B.R. 322, 332 (Bankr. S.D. Tex. 2007) ("Not every counterclaim, or in *Mirant* an actual proof of claim, will involve the process of allowance or disallowance of pre-petition claims or invoke the equitable power of the bankruptcy court to adjust the debtor-creditor relationship."); *In re Paige*, 2007 WL 4530807, at *6 (Bankr. N.D. Tex. Dec. 19, 2007) ("Similarly, an action that may result in a recovery for the estate, thereby enlarging the bankruptcy estate, will not

-6-
Case 3:11-cv-00597-FDW-DCK   Document 88   Filed 09/10/12   Page 6 of 17

necessarily implicate the claims allowance process so as to negatively affect a party's right to a jury trial."); *In re Thigpen*, 2004 WL 6070299, at *4 ("Only issues directly related to the adjudication of the validity, priority and extent of Matrix's claim should be considered as outside the bounds of a jury trial."); *In re Oakwood Homes Corp.*, 378 B.R. 59, 69-70 (Bankr. D. Del. 2007) (holding that a counterclaim against proof of claimant was not part of the claims-allowance process because it does not arise from subject of the proof of claims).

### 3. Defendants' proofs of claim were resolved.

Defendants' argument that there is no relevant distinction between this case and *Langenkamp v. Culp*, 498 U.S. 42 (1990) (per curiam), and *Katchen v. Landy*, 382 U.S. 323 (1966), does not withstand scrutiny.

In *Katchen* and *Langenkamp*, the creditor's proofs of claim were pending and unresolved, 382 U.S. at 325; 498 U.S. at 43, as were the proofs of claim in the other cases Defendants cited. *In re Crown Vantage, Inc.*, 2007 WL 172321, at *2 (N.D. Cal. Jan 18, 2007) ("Fort James filed claims against Crown's bankruptcy estate, and the Trustee responded by, inter alia, filing a claim to set aside transfers made by Crown to Fort James."); *U.S. Bank Nat.l Ass'n v. Verizon Commc'ns Inc.*, 2012 WL 987539, at *1 (N.D. Tex. Mar. 21, 2012) (noting that four of the proofs of claim remained outstanding); *In re B & E Sales Co., Inc. v. Nat'l Bank of Detroit, N.A.*, 129 B.R. 133, 134, 137 (Bankr. E.D. Mich. 1990) (nothing indicating proof of claim other than pending); *In re Washington Mfg. Co. v. Finley*, 133 B.R. 113, 115 (M.D. Tenn. 1991) (nothing indicating proofs of claim other than pending); *In re Se.*

*Materials, Inc.*, 467 B.R. 337, 348-49 (Bankr. M.D.N.C. 2012) ("Tony, Betty, and Chris filed proofs of claim against the Debtor. The Court will consider the claims in the three adversary proceedings.").[3]

In stark contrast, here, Defendants' proofs of claim against FairPoint <u>are resolved</u>.[4] Defendants have <u>received</u> their distribution from FairPoint's bankruptcy estate. [*See* Declaration of Susan Sowell, App. Ex. A] There is no "process" for claims-allowance remaining with respect to Defendants' claims of which this case could be a part.

*In re Moye* is instructive. There a creditor filed a proof of claim and the trustee filed a preference claim against such creditor. 2009 WL 4823998, at *1. Thereafter the court adjudicated and disallowed the creditor's claim. *Id*. The court held that because the proof of claim was adjudicated, the preference action was no longer part of the claims allowance process and thus the creditor had a jury trial right. *Id*. at *2.

Similarly, in *In re 20/20 Sport, Inc.*, the court concluded that a creditor's withdrawn proof of claim meant that the debtor's adversary proceeding against the creditor "does not arise as part of the claims allowance process and cannot be fairly

---

[3] Denial of a jury trial based on a proof of claim was not at issue in *Ravin, Greenberg & Zackin, P.A. v. Ross & Hardies*, 22 F.3d 1242 (3d Cir. 1994). It is inapposite to Plaintiff's case.

[4] In the September 1, 2011 Stipulation and following Order, Defendants and the reorganized FairPoint resolved many of Defendants' proofs of claim, with those claims being deemed fully satisfied. [Ex. D to Defendants' Motion to Strike Jury Demand (Dkt#87-5), at ¶¶3-9.] The rest of Defendants' proofs of claim were then resolved in the March 16, 2012 Stipulation. [Ex. E to Defendants' Motion to Strike Jury Demand (Dkt#87-6), *e.g.*, last decretal paragraph ("the Parties have agreed to resolve in their entirety all remaining, unresolved claims either scheduled by FairPoint or asserted by the Proofs of Claim which were not resolved pursuant to the Initial Stipulation"). Mutual releases relating to Defendants' claims were part of the Stipulations and they are effective. [Dkt#87-5 at ¶ 9; Dkt#87-6 at ¶¶1, 5]

characterized as integral to the restructuring of debtor-creditor relationships." 200 B.R. 972, 979 (Bankr. S.D.N.Y 1996); *see also In re Maui Indus. Loan & Finance Co.*, 2012 WL 405056, at *2-3 (Bankr. D. Haw. Feb. 8, 2012) (withdrawal of proof of claim permitted, allowing creditor to have jury trial).

Defendants have cited no case, and Plaintiff's counsel is aware of none, where a court has denied a jury trial right for a legal claim when the underlying proof of claim was resolved by stipulation.

### 4. This action was never part of a claims-allowance process.

In *Katchen* and *Langenkamp*, the cases upon which Defendants heavily rely, the preference actions were asserted as a counterclaim or used as an objection to pending proofs of claim. *Langenkamp*, 498 U.S. at 43-44; *Katchen*, 382 U.S. at 325. The preference actions were deemed integral parts of the process to resolve those proofs of claim. *Id.* The *Stern* opinion explains this was a vital fact in *Katchen* and *Langenkamp* and distinguished them on that basis.[5] It was a vital fact in Defendants' other cases as well.

In contrast, FairPoint never filed an objection to Defendants' proofs of claim. [*See* Bankruptcy docket sheet, App. Ex. D] Indeed, the time period for FairPoint to object to proofs of claims is past, with FairPoint having asserted none against Defendants' claims. [*See* App. Exs. B and C] This is in stark contrast to Defendants'

---

[5] *Stern*, 131 S. Ct. at 2616 ("[I]n *Katchen* . . . this Court concluded that summary adjudication in bankruptcy was appropriate, because it was not possible for the referee to rule on the creditor's proof of claim without first resolving the voidable preference issue"); and at 2617 ("Our per curiam opinion in *Langenkamp* is to the same effect. We explained there that a preferential transfer claim can be heard in bankruptcy when the allegedly favored creditor has filed a claim, because *then* 'the ensuing preference action by the trustee become[s] integral to the restructuring of the debtor-creditor relationship.") (emphasis in original).

cited cases, including *Idearc*, where the court relied on the fact that "Idearc [the debtor] has objected to the payment of [Verizon's proofs of] claims under 11 U.S.C. § 502(d). . . . Idearc's objections under Section 502(d) remain pending." *U.S. Bank Nat'l Ass'n,* 2012 WL 987539, at *1.

Plaintiff is not pursuing this action as a means to object to or bar Defendant's resolved claims against FairPoint. That is manifest from the Complaint. No objection is asserted. [*See* Dkt#68] The Complaint does not mention Defendants' proofs of claim or implicate them in any way. [*Id.*] This federal district court action was not filed as, and is not, part of a process to allow or disallow Defendants' proofs of claim. Plaintiff, a litigation trust, is an entity separate and distinct from FairPoint. It has no power, right or authority to invoke or join, and never has, a process to allow or disallow Defendant's proof of claim.

This case is divorced from the bankruptcy claims process, not integral to it. That Defendants' proofs of claim were in fact *resolved* and *paid* demonstrates that equitable reordering of the FairPoint debtor's relations with Defendants ***can be*** and ***has been*** accomplished independent of this case.

### C. *Stern v. Marshall* Requires That This Case Be Litigated In An Article III Court Before A Jury

In *Stern*,[6] the debtor, Vickie Lynn Marshall (a/k/a Anna Nicole Smith), filed a tortious interference counterclaim in her bankruptcy against Pierce Marshall, who

---

[6] In *Stern*, The U.S. Supreme Court also reinforced *Granfinanciera* and *Northern Pipeline*'s distinction between actions that seek " 'to augment the bankruptcy estate' and those that seek 'a pro rata share of the bankruptcy res.' " *Stern*, 131 S. Ct. at 2618 (citing *Granfinanciera*, 492 U.S. at 56). Actions to augment the estate typically are not in the realm of "public rights" cases, whereas those such as preferences seeking a pro rata share are. A fraudulent transfer action recovers property

had filed a proof of claim against her estate for defamation damages. *Stern*, 131 S. Ct. at 2601. The bankruptcy court entered final judgment against Pierce for $400 million. *Id*. In post-trial briefing, Pierce challenged the bankruptcy court's jurisdiction to enter final judgment. *Id*. On appeal to the Supreme Court, the Court held that Vickie's counterclaim was "core" as Congress defined "core" proceedings in 11 U.S.C. § 157(b)(2)(C), *id*. at 2605, and it held that Pierce consented to the bankruptcy court's jurisdiction over his proof of claim. *Id*. at 2608. However, the Court held that the bankruptcy court did not have the constitutional power to enter a final judgment on Vickie's state law counterclaim. *Id*. at 2620.

The fact that Pierce had filed a proof of claim was inconsequential. The Court made clear that the key question for whether the bankruptcy court, consistent with Article III, could enter final judgment was "whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process." *Id*. at 2611, 2617, 2618, 2620. Because Vickie's counterclaim was not *necessarily* resolvable in the process of ruling on Pierce's proof of claim, Article III of the Constitution precluded the bankruptcy court from entering final judgment. *Id*. at 2620 (emphasis added). *See also id*. at 2611 ("not necessarily resolvable by a ruling on the creditor's proof of claim").

---

rightfully belonging to the debtor's estate, while a preference action is designed to provide equality of distribution among creditors.

Like Vickie's counterclaim,[7] Plaintiff's fraudulent transfer claims are not "necessarily resolvable" in a process to rule on Defendants' proofs of claim. Even if Defendants' claims had not been allowed and there was a pending claims process, *Stern* would control, because Article III decisions apply equally to Seventh Amendment questions.[8] *Stern v. Marshall* requires that Defendants' motion be denied.

## D. Defendants' Reliance On The Clawback Provision Is Misplaced.

The "clawback" provision in the March 2012 stipulation provides that if Plaintiff prevails in this case, FairPoint may elect to require Defendants to disgorge the settled payments and pursue disallowance of Defendants' claims under Section 502(d) of the Bankruptcy Code. [Dkt#87-6 at ¶ 4] Defendants argue this makes Plaintiff's case part of a claims allowance/disallowance process sufficient to eliminate Plaintiff's Seventh Amendment right. Nothing could be further from the truth.

The test is not whether an outcome *might* give rise to a future claims process. The test is whether this case *is* part of a claims-allowance process. Here, it is not. If, as Defendants urge, a fraudulent transfer case is part of a claims process because it might trigger a future process to adjudicate proofs of claim, *every* avoidance action

---

[7] It is significant that the Supreme Court likened Vickie's counterclaim to a fraudulent transfer action at issue in *Granfinanciera*. *Stern*, 131 S. Ct. at 2616, 2618 ("We see no reason to treat Vickie's counterclaim any differently from the fraudulent conveyance action in *Granfinanciera*").

[8] *E.g., Granfinanciera*, 492 U.S. at 53 ("if a statutory cause of action is legal in nature, the question whether the Seventh Amendment permits Congress to assign its adjudication to a tribunal that does not employ juries as factfinders requires the same answer as the question whether Articele III allows Congress to assign adjudication of that cause of action to a non-Article III tribunal").

would be part of a claims process, because Section 502(h) gives a creditor against whom a preference, and in some circumstances a fraudulent transfer, judgment has been entered rights to file a resulting claim. 11 U.S.C. § 502(h). That is inconsistent with *Granfinanciera* and its progeny, including *Stern*.

Speculation and conjecture about what the future will be after this case does not render it part of the claims process today and *integral* to restructuring of debtor-creditor relations. As the Fifth Circuit held in a case where a plaintiff urged that a lawsuit's outcome could cause filing of a proof of claim making it a "core" action, "[c]onceivably, a final judgment in this proceeding in the plaintiff's favor may lead to proceedings to allow the claim or to discharge the debt. At this juncture, however, these concerns are speculative and insubstantial issues in the proceeding." *In re Wood*, 825 F.2d 90, 97-98 (5th Cir. 1987). Speculation is not a valid basis on which to deny Plaintiff its valuable Seventh Amendment right.

### E. Section 502(d) Of The Bankruptcy Code Is Irrelevant.

Defendants argue that Section 502(d) of the Bankruptcy Code "requires" that this case be resolved first before their claims can finally be allowed or disallowed. Defendants are incorrect. [Motion at pp. 1, 10]

FairPoint and Defendants actually resolved, and FairPoint made distributions on, Defendants' proofs of claim while this case was in a nascent state. By stipulating with Defendants and making distributions on Defendants' allowed claims, FairPoint waived any alleged 502(d) requirement that a proof of claim of a

creditor against whom an avoidance action is filed be disallowed until the creditor pays the avoidable transfer.

Even if Plaintiff prevails against Defendants, it remains *up to FairPoint*, and not the Plaintiff nor the bankruptcy court under Section 502(d), as to whether such disallowance would be sought. Pursuit of disallowance would be at FairPoint's discretion. [Dkt#87-6, ¶4] And, as discussed above, whether FairPoint would even initiate the process for a disallowance under Section 502(d) or (j) is speculative at best.

**F.     Defendants' Position Runs Athwart Of Public Policy.**

According to Defendants, all disputes between the parties would be rendered equitable if a proof of claim had ever been filed by a defendant - - even if the bankruptcy court immediately denied the claim and even if the claim was allowed and paid, as in FairPoint's bankruptcy case. However, "neither precedent nor logic supports the proposition that either the creditor or the debtor automatically waives all right to a jury trial whenever a proof of claim is filed." *Germain*, 988 F.2d at 1330. Instead, the bankruptcy's equitable jurisdiction ends when the proofs of claims are resolved.

## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that the Court deny Defendants' Motion To Strike Plaintiff's Jury Demand and for such other and further relief to which it may be justly entitled.

September 10, 2012                    Respectfully submitted,

                                                             /s/ Jonathan D. Sasser
Jonathan D. Sasser
**ELLIS & WINTERS LLP**
N.C. State Bar No. 10028
PO Box 33550
Raleigh, North Carolina 27636
Telephone Number: (919) 865-7000
Facsimile Number: (919) 865-7010
jon.sasser@elliswinters.com

J. Wiley George (TX Bar. No. 07805445)
Robin Russell (TX Bar No. 17424001)
Charles B. Hampton (TX Bar No. 00793890)
Scott Locher (TX Bar No. 12457500)
**ANDREWS KURTH LLP**
600 Travis, Suite 4200
Houston, Texas 77002
Telephone Number: (713) 220-4200
Facsimile Number: (713) 238-7192
wileygeorge@andrewskurth.com
rrussell@andrewskurth.com
charleshampton@andrewskurth.com
scottlocher@andrewskurth.com

Paul N. Silverstein (NY Bar No. PS 5098)
**ANDREWS KURTH LLP**
450 Lexington Avenue
New York, New York 10017
Telephone Number: (212) 850-2800
Facsimile Number: (212) 850-2929
paulsilverstein@andrewskurth.com

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF COMPLIANCE

      The undersigned certifies that the foregoing Response complies with the requirements of Local Rule 7.1(D) and is less than 4,500 words (excluding the case caption and certificates of counsel) as reported by the word-processing software in which it was prepared, Microsoft Word 2003.

                                       By:   /s/ Jonathan D. Sasser
                                                    Jonathan D. Sasser

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that copies of the foregoing were served on the following counsel of record for Defendants by electronic mail and United States Mail, return receipt requested:

Robert E. Harrington
Andrew W. J. Tarr
**ROBINSON BRADSHAW & HINSON, P.A.**
101 North Tyron Street, Suite 1900
Charlotte, North Carolina 28246
rharrington@rbh.com
atarr@rbh.com

Lee Ann Stevenson
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, New York 10022
leeann.stevenson@kirkland.com

Philip D. Anker
**WILMER CUTLER PICKERING HALE & DORR LLP**
399 Park Avenue
New York, New York 10022
philip.anker@wilmerhale.com

This the 10th day of September, 2012.

By: /s/ Jonathan D. Sasser
Jonathan D. Sasser