IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No.: 3:11-cv-00597

THE FAIRPOINT COMMUNICATIONS,
INC. ET AL. LITIGATION TRUST,

                Plaintiff,

  - v. -

VERIZON COMMUNICATIONS, INC.,
NYNEX CORPORATION, VERIZON NEW
ENGLAND, INC., and VERIZON
INFORMATION TECHNOLOGIES L.L.C.,

                Defendants.

### REPLY IN SUPPORT OF DEFENDANTS'
### MOTION TO STRIKE PLAINTIFF'S JURY DEMAND

## TABLE OF CONTENTS

                                                           **Page**

ARGUMENT .................................................................................................................... 2

       I.      The Trust's Fraudulent-Transfer Action Is Inextricably Tied To The Equitable Claims-Allowance Process ..................................................................... 2

      II.     Verizon's Claims Are Not Resolved ...................................................................... 7

CONCLUSION ................................................................................................................. 10

CERTIFICATE OF COMPLIANCE .............................................................................. 11

CERTIFICATE OF SERVICE ......................................................................................... 12

Defendants Verizon Communications Inc., NYNEX LLC, Verizon New England Inc., and Verizon Information Technologies LLC (collectively, "Verizon") respectfully submit this reply in support of their Motion to Strike Plaintiff's Jury Demand.

Under well-established Supreme Court precedent, the Trust has no right to a jury trial. *Katchen v. Landy*, 382 U.S. 323 (1966), and *Langenkamp v. Culp*, 498 U.S. 42 (1990) (per curiam), establish that the Trust's fraudulent-transfer action against Verizon—a creditor with claims against the bankruptcy estate that are linked by stipulation and the Bankruptcy Code to the outcome of this case—is equitable in nature and thus does not carry a jury right.

In its opposition, the Trust does not contest that Verizon's filing of proofs of claim triggered the claims-allowance process. Nor does the Trust dispute the black-letter principle that an avoidance action—that is, a preference or fraudulent-transfer suit—against a creditor with an unresolved claim against the estate is part of the claims-allowance process and triable only in equity. Indeed, the Trust acknowledges (at 12), as it must, that it lacks a jury right if this case arises as "part of a claims-allowance process." Instead, the Trust advances two arguments, each of which fails. *First*, the Trust contends (at 3-7) that, for various reasons, this particular fraudulent-transfer suit is not subject to the rule of *Katchen* and *Langenkamp*. But none of the decisions on which it relies support that contention: Where they are not irrelevant, the Trust's authorities merely confirm that a fraudulent-transfer suit against a creditor, such as the suit here, carries no jury-trial right. *Second*, the Trust argues (at 9) that its suit cannot be part of the claims-allowance process because all of Verizon's claims in the bankruptcy have been fully "resolved by stipulation." That is simply wrong. Under the express terms of the March 16, 2012 stipulation entered into by FairPoint and Verizon—and, independently, by operation of

Section 502(d) of the Bankruptcy Code—Verizon's claims were only "provisionally allowed" contingent upon the outcome of this suit.

In short, this case must be resolved before Verizon's claims can be finally allowed or disallowed. The Trust's fraudulent-transfer suit is thus inextricably intertwined with the equitable claims-allowance process—just as in *Katchen* and *Langenkamp*. It follows as a matter of law that the Trust has no right to a jury trial.

## ARGUMENT

### I. THE TRUST'S FRAUDULENT-TRANSFER ACTION IS INEXTRICABLY TIED TO THE EQUITABLE CLAIMS-ALLOWANCE PROCESS

As Verizon explained in moving to strike the Trust's jury demand, under *Katchen* and *Langenkamp*, the Trust's avoidance action is triable only in equity to the bench, not in law to a jury. *See* Memorandum of Law in Support of Defendants' Motion to Strike Plaintiff's Jury Demand [Dkt. No. 87] ("Verizon Memo."). Although the Seventh Amendment preserves the right to a jury for actions at common law, including fraudulent-transfer actions, that right does not attach where, as here, the defendant in the fraudulent-transfer suit has filed a proof of claim against the debtor's estate. That is because the "filing [of] a claim against a bankruptcy estate … triggers the process of allowance and disallowance of claims." *Langenkamp*, 498 U.S. at 44. And, as part of that process, Section 502(d) of the Bankruptcy Code requires resolution of a fraudulent-transfer action against a creditor before that creditor's claims may be finally allowed or disallowed. 11 U.S.C. § 502(d); *see also Katchen*, 382 U.S. at 330, 331 n.5 (interpreting statutory predecessor to Section 502(d)). Because the fraudulent-transfer action must be decided before the creditor's claim can be resolved, it becomes "part of the claims-allowance process which is triable only in equity." *Langenkamp*, 498 U.S. at 44.

Those principles are dispositive of the Trust's right to a jury trial, as Verizon has explained, *see* Verizon Memo. at 5-8, and as the district court recently held in another fraudulent-transfer case. *See U.S. Bank Nat'l Ass'n v. Verizon Commc'ns, Inc.* ("*Idearc*"), 2012 WL 987539 (N.D. Tex. Mar. 21, 2012), *reconsideration denied by* 2012 WL 3034707 (N.D. Tex. July 25, 2012) ("*Idearc Recon.*"). The Trust's contrary arguments fail.

*First*, the Trust relies (at 2-5) on *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989), to argue that because its fraudulent-transfer claim is "legal in nature" and a matter of private right, it has a right to a jury. That reliance is misplaced. In *Granfinanciera*, the Court held that a defendant in a fraudulent-transfer case who had *not* filed a claim against the bankruptcy estate— unlike Verizon here—had a right to a jury trial. *Id.* at 36, 56-59. Far from supporting the Trust's position, *Granfinanciera* expressly confirms that a fraudulent-transfer action carries no jury trial right when, as here, the defendant *has* filed a claim against the bankruptcy estate. *See id.* at 58 (reaffirming *Katchen* and explaining that, "under the Seventh Amendment, a creditor's right to a jury trial on a bankruptcy trustee's preference [or fraudulent-transfer] claim depends upon whether the creditor has submitted a claim against the estate"); *see also Langenkamp,* 498 U.S. at 44 ("[B]y filing a claim against a bankruptcy estate the creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power. If the creditor is met, in turn, with [an avoidance] action from the trustee, that action becomes part of the claims-allowance process which is triable only in equity."). That is precisely the case here: Because Verizon filed proofs of claim, the final resolution of which depend on the outcome of the Trust's fraudulent-transfer suit, *Katchen, Granfinanciera,* and *Langenkamp* dictate the conclusion that the suit is part of the equitable claims-allowance process and carries no right to a jury trial.

3

*Second*, the Trust contends (at 5) that "the filing of a proof of claim alone does not itself transform a 'legal' claim into an equitable claim." That is true, but irrelevant. As Verizon explained in its opening memorandum (at 3-4, 5-6), it is the existence of a proof of claim by a creditor *and* an avoidance action governed by Section 502(d) that inextricably ties a fraudulent-transfer suit to the claims-allowance process. Avoidance actions have a special relationship to the claims-allowance process: Under Section 502(d), an avoidable transfer must be recovered from a creditor *before* that creditor's claims can be finally allowed. It is thus "Section 502(d) [that] makes the resolution of the preference or fraudulent transfer issue 'integral' to the claims allowance process." *Idearc*, 2012 WL 987539, at *3. Decisions that do not involve fraudulent-transfer actions, and therefore that do not implicate Section 502(d), simply have no bearing on the Trust's jury demand.

Almost all the authority upon which the Trust relies is irrelevant for that reason. The decisions the Trust cites either (1) do not involve a fraudulent-transfer or preference action or (2) address creditors who never filed a claim or whose claim had been disallowed. *Germain v. Connecticut National Bank*, 988 F.2d 1323 (2d Cir. 1993), is illustrative. In that case, the Second Circuit found a jury-trial right as to a trustee's tort and contract claims, noting that their resolution would "ha[ve] no effect whatever on the allowance of the [defendant creditor's] claims" against the bankruptcy estate. *Id.* at 1327. But the court distinguished avoidance actions like the Trust's suit here, explaining that such suits *do* "affect the allowance of the creditor's claim" by virtue of Section 502(d) and are thus part of the "claims-allowance process." *Id.* Six other decisions the Trust cites, like *Germain*, do not address a jury-trial right for preference or

4

fraudulent-transfer actions at all.[1]  And *In re Moye*, 2009 WL 4823998, at *2 (Bankr. S.D. Tex. Dec. 9, 2009), involved a preference action against a creditor whose claim had already been finally disallowed, meaning that Section 502(d) was no longer implicated.[2]  In short, no authority the Trust cites enables it to evade the conclusion that Supreme Court precedent mandates: Section 502(d) inextricably ties the Trust's fraudulent-transfer action against Verizon to the equitable claims-allowance process.

*Third*, the Trust contends (at 9-10) that its fraudulent-transfer action is not part of the claims-allowance process because (1) "FairPoint never filed an objection to Defendants' proof of claim" and (2) the Trust, "an entity separate and distinct from FairPoint," is "not pursuing this action as a means to object to or bar Defendant's resolved claims against FairPoint."  These arguments are also unavailing.  As *Katchen* and *Langenkamp* make clear, it is the "filing [of] a [bankruptcy] claim"—not whether or how an objection is made to the claim—that "triggers the

---

[1] *See In re Freeway Foods of Greensboro, Inc.*, 449 B.R. 860, 884-87 (Bankr. M.D.N.C. 2011); *In re Thigpen*, 2004 WL 6070299, at *1-2 (Bankr. S.D. Ala. Aug. 2, 2004); *In re Brooke Corp.*, 2011 WL 4971503, at *1-2 (Bankr. D. Kan. Sept. 14, 2011); *In re British American Properties III, Ltd.*, 369 B.R. 322, 332 (Bankr. S.D. Tex. 2007); *In re Paige*, 2007 WL 4530807, at *1 (Bankr. N.D. Tex. Dec. 19, 2007); *In re Oakwood Homes Corp.*, 378 B.R. 59, 66 (Bankr. D. Del. 2007).

[2] Although two decisions the Trust cites do involve fraudulent-transfer actions, these decisions are likewise inapposite because they involve the withdrawal of a bankruptcy reference, which is not at issue here.  In any event, the reasoning of both decisions has been questioned.  In *Picard v. Katz*, 825 F. Supp. 2d 484 (S.D.N.Y. 2011), the court reasoned that defendants' decision to move the district court to withdraw the reference from the bankruptcy court "substantially sever[ed]" adjudication of the trustee's fraudulent-transfer claims from the claims-allowance process.  *Id.* at 486.  Nothing of the sort occurred here:  FairPoint did not file suit in bankruptcy court, and Verizon has not sought to remove the case from bankruptcy court.  In any event, as the *Idearc* court explained, even if *Picard* were applicable, it cannot be squared with *Langenkamp*.  *See* 2012 WL 987539, at *4-5.  Nor does *Mirant Corp. v. Southern Co.*, 337 B.R. 107 (N.D. Tex. 2006), help the Trust.  That court was not deciding whether the fraudulent-transfer suit would be tried to a jury, but whether to withdraw the reference from a bankruptcy court.  *See id.* at 119-22.  Although the court did read *Langenkamp* narrowly in *dicta*, it has been persuasively criticized on that score.  *See In re Endeavour Highrise L.P.*, 425 B.R. 402, 408 n.3 (Bankr. S.D. Tex. 2010); *Idearc*, 2012 WL 987539 at *3-4.

5

process of allowance and disallowance of claims." *Langenkamp*, 498 U.S. at 44 (internal quotation marks omitted); *Katchen*, 382 U.S. at 336. Indeed, in *Langenkamp*, the debtor had not filed an objection to a proof of claim. Rather, as here, the trustee had brought a separate avoidance action. *See Langenkamp*, 498 U.S. at 43. The whole point of *Langenkamp*, in fact, was that the rule of *Katchen* extends to avoidance actions that are *not* decided as part of a claim objection. *See* Verizon Memo. 7, 9-10. It is likewise irrelevant that the Trust "is an entity separate and distinct from FairPoint," as the Trust argues (at 10). The Trustee "is a successor of the Debtors and a representative of their estates." SAC ¶ 16 [Dkt. No. 68]. "Because the trust stands in the shoes of the debtor, it cannot have a greater or lesser right to a jury trial than the original debtor." *Idearc*, 2012 WL 987539, at *5.

*Finally*, the Trust mistakenly contends (at 10-11) that *Stern v. Marshall*, 131 S. Ct. 2594 (2011), requires that its fraudulent-transfer claims be litigated in an Article III court "before a jury." In *Stern,* the Court addressed whether an Article I bankruptcy court could constitutionally enter final judgment on a state-law tort counterclaim by a debtor against a creditor who had filed a claim against the estate. *Id.* at 2600-02. It held that the state-law counterclaim was a matter of private right that required entry of final judgment by an Article III tribunal. *Id.* at 2617. But *Stern* did not involve a fraudulent-transfer action. And it did nothing to disturb *Katchen* and *Langenkamp*'s holding that a fraudulent-transfer action against a creditor is inextricably tied to the equitable claims-allowance process and thus carries no right to a jury. Rather, *Stern* distinguished the state-law tort counterclaim at issue from a preference or fraudulent-transfer action against a creditor (that is, an action governed by Section 502(d)), explaining that such avoidance actions must be resolved "as part of the process of allowing or disallowing claims," and thus become "integral to the restructuring of the debtor-creditor relationship." *Id.* at 2616-17;

*see Idearc Recon.*, 2012 WL 3034707, at *3 (rejecting a similar argument as "without merit" and noting that *Stern* "distinguished but did not disturb" *Langenkamp*).

## II. VERIZON'S CLAIMS ARE NOT RESOLVED

The Trust argues (at 8) that all of Verizon's "claims against FairPoint are resolved" and thus "[t]here is no process for claims-allowance remaining with respect to [Verizon's] claims of which this case could be a part." That is demonstrably false.

The stipulation the Trust cites expressly provides that the Verizon claims it addresses are only "provisionally allowed." Stipulation Regarding All Remaining Claims ¶ 4 (Mar. 16, 2012) ("March Stipulation") (Ex. E to Verizon Memo.). And the stipulation contains a clawback provision that makes crystal clear that the final allowance or disallowance of those claims depends upon the resolution of this suit: "[I]n the event of the entry of a final, nonappealable judgment against Verizon on a Litigation Trust Claim determining that Verizon is an entity from which property is recoverable or an entity that is a transferee of an avoidable transfer … the Claims *shall* be subject to disallowance in accordance with section 502(d)." *Id.* (emphasis added); *see* Verizon Memo. at 3-4. By the express terms of the stipulation and by operation of Section 502(d), the Trust's avoidance action here is purposefully, expressly, and inextricably linked to the final allowance or disallowance of Verizon's claims. These are precisely the circumstances in which the rule of *Katchen* and *Langenkamp* applies.

The three decisions the Trust cites (at 8-9) in support of its argument on this point are, once again, irrelevant. In those cases, a creditor had either *withdrawn* a proof of claim (*In re 20/20 Sport, Inc.*, 200 B.R. 972, 979 (Bankr. S.D.N.Y. 1996); *In re Maui Indust. Loan & Fin. Co.*, 2012 WL 405056, at *2-3 (Bankr. D. Haw. Feb. 8, 2012)) or a court had *disallowed* a proof of claim (*Moye*, 2009 WL 4823998, at *2). It may well be that an avoidance action against a

7

creditor with a withdrawn or disallowed claim is no longer part of the claims-allowance process. But that is of no help to the Trust: Verizon's claims have not been withdrawn or disallowed. Verizon's claims remain unresolved, having been only "provisionally allowed," with final allowance or disallowance tied by stipulation and statute to the outcome of this case. In these circumstances, the Trust's lawsuit remains "necessarily integral" to the claims-allowance process. *Idearc*, 2012 WL 987539, at *5.[3]

The Trust further argues (at 12-14) that the stipulation's clawback provision is insufficient to make "Plaintiff's case part of the claims allowance/disallowance process" because it is speculative whether FairPoint would invoke its rights under the provision.[4] The Trust's argument again misses the point. As *Langenkamp* held, if the defendant creditor has filed a proof of claim, and the trustee then sues that creditor for recovery of an avoidable transfer, that fraudulent-transfer suit (from its commencement) is necessarily part of the equitable claims-allowance process. It does not matter whether an objection to the proof of claim has been filed. *See* 498 U.S. at 43-44. Nor is there anything "speculative" about the clawback provision or about Section 502(d). Each provides—as a matter of contract and bankruptcy law, respectively—that Verizon's claims are only "provisionally allowed" and that a court "shall disallow" the claims if the Trust prevails in this action. March Stipulation ¶ 4; 11 U.S.C. § 502(d). There is no requirement that FairPoint or anyone else object to the claims. Rather,

---

[3] Moreover, as Verizon noted in its opening memorandum (at 4), even if the stipulation had not expressly provided that Verizon's claims would be disallowed if the Trust prevails here, Section 502(j) of the Bankruptcy Code permits any party in interest to seek reconsideration of a previously allowed claim based on new facts—such as a fraudulent-transfer judgment against the claimant—indicating that it should be disallowed.

[4] The Trust's suggestion (at 13) that FairPoint waived any rights under Section 502(d) is flatly contradicted by the terms of the clawback provision, through which FairPoint expressly preserves its rights under Section 502(d). In any event, as the *Idearc* court held, the "mandatory language of Section 502(d)" is inconsistent with a finding of waiver. 2012 WL 987539, at *5.

8

under Section 502(d) and the stipulation, disallowance is mandatory. 11 U.S.C. § 502(d); March Stipulation ¶ 4; *cf.* 11 U.S.C. § 502(b) (providing for the disallowance of claims on other grounds only "if ... an objection ... is made"). It is that direct and substantial connection between this case and Verizon's claims, and not a prediction about what FairPoint might or might not do in the future, that renders this suit part of the equitable claims-allowance process.[5] The Trust has no right to a jury trial.

---

[5] The Fifth Circuit's decision in *In re Wood*, 825 F.2d 90 (5th Cir. 1987), does not support the Trust's argument. In *Wood*, a plaintiff with state-law claims against debtors had "not filed a proof of claim" in bankruptcy. *Id.* at 98. In deciding whether those claims nonetheless were a "core proceeding" that the bankruptcy court could finally adjudicate under 28 U.S.C. § 157, the Fifth Circuit simply declined to speculate whether a judgment for the plaintiff would "lead to proceedings to allow the claim or discharge the debt." *Id.* at 97-98. Here, Verizon *has* filed proofs of claim; a claims-allowance process has been triggered; and the Trust's avoidance action is necessarily part of that process in light of the clawback provision and Section 502(d).

## CONCLUSION

Defendants' Motion to Strike Plaintiff's Jury Demand should be granted.

Dated: September 20, 2012
Charlotte, North Carolina

                                        s/ Robert E. Harrington
Robert E. Harrington
N.C. Bar No. 26967
**ROBINSON, BRADSHAW & HINSON**
101 North Tryon Street, Suite 1900
Charlotte, NC 28246
Phone: 704-337-8387
Facsimile: 704-373-3987
rharrington@rbh.com

*Counsel for Defendants*

*ADMITTED PRO HAC VICE:  (Of Counsel)*

Lee Ann Stevenson
Matthew F. Dexter
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Phone: 212-446-4917
Facsimile: 212-446-6460
leeann.stevenson@kirkland.com
matthew.dexter@kirkland.com

Craig Goldblatt
Danielle Spinelli
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue N.W.
Washington, D.C. 20006
Phone: 202-663-6000
Facsimile: 202-663-6363
craig.goldblatt@wilmerhale.com
danielle.spinelli@wilmerhale.com

10

Case 3:11-cv-00597-FDW-DCK   Document 91   Filed 09/20/12   Page 12 of 14

## **CERTIFICATE OF COMPLIANCE**

This memorandum is not addressed by Paragraph 3.c.i-ii of the Case Management Order entered on March 21, 2012 in this action, but complies with the page limit, font size, and other requirements contained in Local Rule 7.1(D).

This 20th day of September, 2012.

s/ Robert E. Harrington
Robert E. Harrington

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was electronically filed today using the Court's CM/ECF system which will electronically notify the following counsel of record:

>Jonathan D. Sasser
>James M. Weiss
>**ELLIS & WINTERS LLP**
>PO Box 33550
>Raleigh, North Carolina  27636
>jon.sasser@elliswinters.com
>jamie.weiss@elliswinters.com
>
>J. Wiley George
>Robin Russell
>Charles B. Hampton
>Scott Locher
>**ANDREWS KURTH LLP**
>600 Travis, Suite 4200
>Houston, Texas 77002
>wileygeorge@andrewskurth.com
>rrussell@andrewskurth.com
>champton@akllp.com
>slocher@akllp.com
>
>Paul N. Silverstein
>**ANDREWS KURTH LLP**
>450 Lexington Avenue
>New York, New York  10017
>paulsilverstien@andrewskurth.com

This 20th day of September, 2012.

>>s/ Robert E. Harrington
>>Robert E. Harrington