IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No.: 3:11-cv-00597

| | |
|---|---|
| THE FAIRPOINT COMMUNICATIONS, INC. *ET AL.* LITIGATION TRUST<br><br>Plaintiff,<br><br>- v. -<br><br>VERIZON COMMUNICATIONS, INC., NYNEX CORPORATION, VERIZON NEW ENGLAND, INC., AND VERIZON INFORMATION TECHNOLOGIES, L.L.C.<br><br>Defendants. | |

### DEFENDANTS' REPLY IN SUPPORT OF ITS
### MOTION FOR PROTECTIVE ORDER

Verizon[1] files this reply in support of its Motion for Protective Order (the "Motion"), and respectfully states as follows:

### INTRODUCTION

After waiving its right to seek discovery related to the Idearc litigation in this Court by failing to raise the issue within 14 days as required by the CMO, Plaintiff served a subpoena seeking documents directly from the Idearc Litigation Trust (the "Subpoena"), the plaintiff in the Idearc Action. In response to the Subpoena and after conferring with Plaintiff's counsel, Verizon filed a motion to quash in the Western District of Washington where the Subpoena was served, as well as the instant Motion for Protective Order. Once the Motion, supporting memorandum,

---

[1] All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion for Protective Order.

and response had been filed, Plaintiff sought a telephonic discovery conference with United States Magistrate Judge David Keesler to discuss the "Pending Protective Order Motion re Idearc lawsuit materials" and Verizon's objection to producing certain documents dated after the transaction closed.  (Declaration of Lee Ann Stevenson ("Stevenson Decl.") at ¶3; Ex. A to Stevenson Decl.)

Magistrate Judge Keesler conducted a telephonic conference with the parties regarding the Motion for Protective Order as well as other discovery issues on Thursday, September 20, 2012.[2]  (Stevenson Decl. at ¶4.)  At the conclusion of the conference Magistrate Judge Keesler indicated that the Plaintiff is not entitled to discovery related to the Idearc action, including requested transcripts of depositions taken in the Idearc case.  (*Id.*)

In a subsequent Order dated September 24, 2012, the Court instructed Verizon to submit this reply in support of the Motion, along with an update on the status of the action in Washington and of any progress the parties have made toward compromise.  (Order, [Dkt. No. 92].)  The motion to quash that Verizon filed in the Western District of Washington is fully briefed, but no action has been taken by that court. (Stevenson Decl. at ¶5.)  The parties have been unable to resolve the issue that is the subject of this Motion.  (*Id*. at ¶6.)  By way of compromise, on September 25, 2012, Verizon proposed to waive its timeliness objection and permit Plaintiff to ask questions regarding the Idearc transaction at the upcoming depositions (subject to relevance and privilege objections) and to revisit a request for documents if Plaintiff established relevance at a deposition.  (*Id.*)  Plaintiff rejected this proposal, continuing instead to

---

[2]  The parties have subsequently resolved the other outstanding discovery dispute discussed on the September 20, 2012 teleconference regarding Verizon's use of a March 31, 2008 cut-off date for certain document requests. Verizon has agreed to waive its timeliness objection and will be producing certain documents dated after March 31, 2008, notwithstanding Plaintiff's failure to comply with section 1(i) of the CMO. (Stevenson Decl. at ¶9.)

press its request for deposition transcripts, trial transcripts and pleadings from the Idearc litigation. (*Id.* at ¶7.)

**ARGUMENT**

Although the Subpoena was served in Washington, this court has authority to issue a protective order preventing the discovery from going forward. *See* Fed. R. Civ. P. 26(c)(1); *Lefkoe v. Jos. A. Bank Clothiers, Inc.*, 577 F.3d 240, 246 (4th Cir. 2009). That is particularly the case where, as here, the Subpoena seeks documents that Defendants objected to providing in party-discovery. *Richardson v. Sexual Assault/Spouse Abuse Research Center, Inc.*, 270 F.R.D. 223, 226-27 (N.D. Md. 2010) ("[A] subpoena is not a proper means for obtaining documents previously sought through a rule 34 production request, after the adverse party objected to the request.") (citing *Joiner v. Choicepoint Servs., Inc.*, Civ. No. 1:05CV321, 2006 WL 2669370, at *5 (W.D.N.C. Sept. 15, 2006)).

Although Plaintiff has offered to narrow the scope of the Subpoena, its proposal remains problematic because it has waived the right to seek documents related to the Idearc litigation as a result of its failure to raise the dispute within fourteen days of June 1, 2012, when Verizon informed Plaintiff that it would not reconsider its objection to producing Idearc-related documents. (Stevenson Decl. at ¶8; Ex. D to Stevenson Decl.) Substantively, Plaintiff's proposal is no more helpful, as the offer does not adequately address the grounds upon which Verizon's Motion for Protective Order is based. In particular, the proposal does not resolve Verizon's legitimate concerns with respect to privilege, confidentiality, burden, or relevance. While Plaintiff has agreed to withdraw the request for ***documents*** that are attorney-client privileged, there remains a request for deposition transcripts, trial transcripts, pleadings, and exhibits, many of which contain portions that are attorney-client privileged or refer to documents that are attorney-client privileged. Moreover, concerns about confidentiality are not adequately

3

addressed simply by substituting one confidentiality order for another.  The parties' Agreed Confidentiality Order in the Idearc case expressly provides that a party may use "Confidential Information solely in connection with its investigation, pursuit and defense" of claims *in the Idearc case*.  (Ex. A to Motion for Protective Order [Dkt. No. 85] at ¶9.)  It is thus a violation of the Idearc Agreed Confidentiality Order to use "Confidential" documents from the Idearc litigation in this litigation.

And Verizon is not "speculating" about the "confidentiality concerns of [third-]parties," as Plaintiff charges; third-parties who produced documents in the Idearc litigation, including McKinsey & Company, Inc., JPMorgan, and Debevoise & Plimpton LLP, contacted Plaintiff, the Idearc Litigation Trust, and/or Verizon in writing when the Subpoena was issued to ensure that their documents would not be produced.  (Supplemental Declaration of Casey A. Burton ("Supp. Burton Decl."), attached as Ex. E to Stevenson Decl., at ¶¶3-6; Exs. 1-3 to Supp. Burton Decl.)  Those parties had every reason to believe that the Agreed Confidentiality Order in the Idearc case would be respected by the Idearc Litigation Trust when they produced their confidential documents, and their legitimate confidentiality concerns should be taken into account by the Court.

While the Subpoena was served on the Idearc Litigation Trust, there should be no confusion that the burden to comply—to ensure that confidentiality and privilege are respected— will be on Verizon.  The Idearc Litigation Trust has not shown the same concern as Verizon for privilege and confidentiality in the past, having previously failed to file privileged documents under seal and having been rebuked by the Idearc court as a result.  (Ex. G to Motion for Protective Order [Dkt. No. 85] at n.1)  The Idearc Litigation Trust, after all, has no ongoing business operations and exists solely for the purpose of pursuing its current lawsuit against

Verizon; it does not have the same long-term outlook with regard to confidentiality and privilege as Verizon (or the third-parties who produced confidential documents in the Idearc case).

There should also be no mistake that even though Plaintiff has narrowed the scope of its request, the burden on Verizon to comply with the Subpoena remains significant. Just the eight depositions that the FairPoint Lit Trust identified in its Response (n. 1) total more than 3,100 pages, with more than 8,500 pages of exhibits. (Supp. Burton Decl. (Ex. E to Stevenson Decl.) at ¶8.)[3] Verizon's counsel would be required to review for privilege, propose redactions, confer with counsel for the Idearc Litigation Trust (and third-parties) in order to reach agreement as to appropriate redactions, all in the weeks leading up to (and possibly during) a several-week, multi-billion dollar trial of the Idearc case. Previously, in response to a motion to intervene in the Idearc case by a different group of plaintiffs suing Verizon who also hoped to unseal pleadings, Verizon was required to redact a portion of its summary judgment briefing. (*Id*. at ¶¶9-10.) Even that effort to redact only about 450 pages took over 30 hours of attorney time.[4] (*Id*. at ¶10.) And, despite the substantial time and effort devoted by Verizon's counsel to review and redact that set of sealed pleadings, counsel for the Idearc Litigation Trust would not agree to the proposed redactions, so additional work would still be required before even that small subset of redacted pleadings could be produced to Plaintiff. (*Id.* at ¶11.)

The amount of attorney and administrative time required to review, redact, finalize and produce the many thousands of pages of depositions (and exhibits), trial transcripts (and exhibits), and pleadings requested by Plaintiff would be enormous. At the same time, counsel

---

[3] Plaintiff's counsel has since indicated that they are willing to reduce the number of deposition transcripts they are seeking from eight to five or six. They also indicated, however, that they will want the transcripts and accompanying exhibits of any trial testimony that these witnesses give at the upcoming Idearc trial, thus increasing the burden to Verizon. (Stevenson Decl. at ¶7.)

[4] Ultimately, the motion to intervene brought by Plaintiffs suing Verizon as part of a class action regarding Idearc ERISA obligations was denied. (Ex. I to Motion for Protective Order [Dkt. No. 85].)

for Verizon in the Idearc matter are preparing for a trial that is scheduled to begin on October 15. (*Id.* at ¶13.) The parties each have over 2,000 exhibits on their trial exhibit lists and the parties expect to call in excess of 30 witnesses during the trial. (*Id.*) This substantial burden, especially when combined with the legitimate confidentiality concerns of Verizon and the lack of any relevance to the instant litigation, make the case for granting the protective order overwhelming.

Verizon's relevance objection is not a matter of breadth or scope, but rather a fundamental contention that an unrelated transaction completed by Verizon is irrelevant to this litigation. Verizon has consistently asserted that the Idearc transaction is not relevant and has refused to produce any documents to Plaintiff regarding the Idearc transaction.[5] (Stevenson Decl. at ¶8; Exs. B-D to Stevenson Decl.) Plaintiff never challenged those objections with the Court, choosing instead to serve a third-party subpoena on a friendly litigation trust that is also suing Verizon, and only then requesting a telephonic hearing on Verizon's Motion for Protective Order.

Plaintiff's only attempt to establish that the Idearc transaction is relevant to the FairPoint litigation is to allege that some of the same Verizon employees worked on both deals, both transactions were structured as tax-free spin-offs, and both spun-off companies (eventually) filed for bankruptcy. (Pl's Resp. at 3-4.) This, Plaintiff claims, establishes a "pattern of misconduct by Verizon to cash-out of unwanted businesses." (*Id.* at 5.) Plaintiff's relevance argument does not withstand scrutiny. It is self-evident that Verizon corporate development employees were involved in both Verizon corporate transactions at issue, just as they were presumably involved in all other Verizon corporate transactions during the time; their involvement does not subject all of Verizon's corporate transactions to discovery. Rather, what is far more indicative of the

---

[5] Verizon has also argued that the FairPoint transaction is not relevant to the Idearc case, and did not produce documents related to FairPoint in that case. (Supp. Burton Decl. (Ex. E to Stevenson Decl.) at ¶12.)

6

Idearc transaction's relevance (or lack of relevance) is the fact that the Idearc transaction involved a "straight spin" of Verizon's ***directory publishing business*** as a newly formed company, while the FairPoint transaction, on the other hand, involved the merger of Verizon's northern New England ***landline services business*** with an existing public telecommunications company, FairPoint. The two transactions involved different businesses, different Verizon entities and different transaction structures.

Plaintiff's attempt to establish a "pattern of misconduct by Verizon" does not make the Idearc transaction any more relevant. In support, Plaintiff claims that *In re Abdelaziz* stands for the proposition that "the existence or cumulative effect of a pattern or series of transactions or course of conduct of a party can indicate a badge of fraud." (Pl's Resp. at 5.) But, *In re Abdelaziz* says no such thing. Instead, *In re Abdelaziz* recognizes that a "pattern or series of transactions" by the ***debtor*** (in this case, FairPoint) "***after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors***" can be a badge of fraud, not a series of transactions by the ***transferor*** that ***precedes*** the alleged fraudulent transfer. No. 10-51257, 2012 WL 359756, at *3 (Bankr. M.D.N.C. Feb. 2, 2012) (emphasis added).[6] To the contrary, the Federal Rules of Evidence expressly prohibit evidence of "prior bad acts" to prove action in conformity therewith on a particular occasion. *See* Fed. R. Evid. 404; *Becker v. ARCO Chem. Co.*, 207 F.3d 176, 207 (3d Cir. 2000) (finding that admission of evidence of a company's prior bad acts to show that it had a propensity to act in a certain way was improper under Rule 404(b)).

---

[6] The other case Plaintiff cites, *In re Summit Place LLC*, does not even mention the alleged "pattern or series of transactions" badge of fraud. 298 B.R. 62, 69-72 (Bankr. W.D.N.C. 2002). In fact, the court in that case found that no intent to defraud was present. *Id.*

7

Tellingly, Plaintiff is not seeking discovery of the factual documents that describe the Idearc transaction and Verizon's supposed wrongdoing, but documents from the Idearc *litigation*—sealed pleadings, deposition transcripts, and trial transcripts. Thus, it appears that Plaintiff is simply hoping to gain a litigation advantage by obtaining discovery about the litigation strategy used in the Idearc case, and not about the Idearc transaction itself. That strategy is not conceivably relevant to this case.

Given the lack of relevance of the evidence Plaintiff is seeking, and the extreme burden Verizon faces in having to review, redact and produce the requested information, the Court should issue the protective order.

Verizon respectfully requests that the Court grant the Motion for Protective Order, and any and all additional relief to which it may be justly entitled.

Dated: September 27, 2012  
Charlotte, North Carolina

s/ Robert E. Harrington  
Robert E. Harrington  
N.C. Bar No. 26967  
**ROBINSON, BRADSHAW & HINSON, P.A.**  
101 North Tryon Street, Suite 1900  
Charlotte, NC 28246  
Phone: 704-377-8387  
Facsimile: 704-373-3987  
rharrington@rbh.com

*Counsel for Defendants*

*ADMITTED PRO HAC VICE: (Of Counsel)*

Lee Ann Stevenson
Matthew F. Dexter
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Phone: 212-446-4917
Facsimile: 212-446-6460
leeann.stevenson@kirkland.com
matthew.dexter@kirkland.com

Craig Goldblatt
Danielle Spinelli
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue N.W.
Washington, D.C. 20006
Phone: 202-663-6000
Facsimile: 202-663-6363
craig.goldblatt@wilmerhale.com
danielle.spinelli@wilmerhale.com

**CERTIFICATE OF COMPLIANCE**

      This reply memorandum is filed pursuant to Judge Keesler's September 24, 2012 Order in this matter (Docket No. 92). Page limits for reply memoranda in discovery disputes are not addressed by Paragraph 3.c.i-ii of the Case Management Order entered on March 21, 2012 in this action. Therefore, this reply memorandum complies with the page limit, font size, and other requirements contained in Local Rule 7.1(D).

      This 27th day of September, 2012.

                                                  s/ Robert E. Harrington
                                                  Robert E. Harrington

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was electronically filed today using the Court's CM/ECF system which will electronically notify the following counsel of record:

    Jonathan D. Sasser
    James M. Weiss
    **ELLIS & WINTERS LLP**
    PO Box 33550
    Raleigh, North Carolina 27636
    jon.sasser@elliswinters.com
    jamie.weiss@elliswinters.com

    J. Wiley George
    Robin Russell
    Charles B. Hampton
    Scott Locher
    **ANDREWS KURTH LLP**
    600 Travis, Suite 4200
    Houston, Texas 77002
    wileygeorge@andrewskurth.com
    rrussell@andrewskurth.com
    champton@akllp.com
    slocher@akllp.com

    Paul N. Silverstein
    **ANDREWS KURTH LLP**
    450 Lexington Avenue
    New York, New York 10017
    paulsilverstien@andrewskurth.com

This 27th day of September, 2012.

                                      s/ Robert E. Harrington
                                      Robert E. Harrington

10
Case 3:11-cv-00597-FDW-DCK   Document 93   Filed 09/27/12   Page 10 of 10