IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
Civil Action No.: 3:11-cv-00597-FDW-DCK

THE FAIRPOINT COMMUNICATIONS, INC.
ET AL. LITIGATION TRUST,

                              Plaintiff,

    - v. -

VERIZON COMMUNICATIONS, INC.,
NYNEX CORPORATION, VERIZON NEW
ENGLAND, INC., and VERIZON
INFORMATION TECHNOLOGIES L.L.C.,

                              Defendants.

**DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT.............................................................................................................................. 1

I. The Court Should Dismiss Count I For Constructive Fraudulent Conveyance.................. 1

    A. The Transfers Are Not Avoidable As Constructive Fraudulent Conveyances Because They Were Settlement Payments Made By Financial Institutions........................................................................................... 1

        1. The Transfers Were Settlement Payments..................................................... 1

        2. The Settlement Payments Were Made By Financial Institutions. .............. 3

    B. The Transfers Are Not Avoidable As Constructive Fraudulent Conveyances Because FairPoint Received Reasonably Equivalent Value As A Matter of Law. ........................................................................................ 4

II. The Court Should Dismiss Count II Because There Is No Evidence That Anyone Intended To "Hinder, Delay Or Defraud" A Creditor. ....................................................... 7

    A. There Was No Lack Of Consideration.................................................................. 8

    B. There Was No "Family Relationship" Between The Parties................................. 8

    C. There Was No Retention Of The Property For Personal Use................................ 9

    D. The Financial Condition Of The Debtor Was Not Suspicious. ............................. 9

    E. There Was No Financial Difficulty Or Threat Of Lawsuit.................................. 10

    F. There Was No Suspicious Chronology Of Events And Transfers........................ 10

CONCLUSION......................................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*Ayes v. U.S. Dept. of Veterans Affairs*,
  473 F.3d 104 (4th Cir. 2006) ................................................................................................ 4

*Batlan v. Bledsoe (In re Bledsoe)*,
  569 F.3d 1106 (9th Cir. 2009) .............................................................................................. 8

*Contemporary Indus. Corp. v. Frost*,
  564 F.3d 981 (8th Cir. 2009) ............................................................................................ 2, 3

*Cox v. Ridgestone Bank (In re Cent. Illinois Energy Coop.)*,
  No. 09-81409, 2012 WL 5076288 (Bankr. C.D. Ill. Oct. 18, 2012) .................................... 6

*Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*,
  651 F.3d 329 (2d Cir. 2011) ............................................................................................. 2, 3

*Frierdich v. Mottaz*,
  294 F.3d 864 (7th Cir. 2002) ............................................................................................. 10

*In re Plassein Int'l Corp.*,
  590 F.3d 252 (3d Cir. 2009) ............................................................................................. 2, 3

*In re QSI Holdings, Inc.*,
  571 F.3d 545 (6th Cir. 2009) ............................................................................................... 3

*In re Resorts Int'l, Inc.*,
  181 F.3d 505 (3d Cir. 1999) ................................................................................................ 3

*Kaiser Steel Corp. v. Charles Schwab & Co.*,
  913 F.2d 846 (10th Cir. 1990) ............................................................................................. 3

*Krohn v. Cromer (In re Cromer)*,
  214 B.R. 86 (Bankr. E.D.N.Y. 1997) ................................................................................... 9

*Lafarge North America, Inc. v. Poffenberger (In re Poffenberger)*,
  471 B.R. 807 (Bankr. D. Md. 2012) .................................................................................... 8

*Lippe v. Bairnco Corp.*,
  249 F. Supp. 2d 357 (S.D.N.Y. 2003),
  *aff'd*, 99 F. App'x 274 (2d Cir. 2004) ............................................................................... 10

*Munford v. Valuation Research Corp. (In re Munford, Inc.)*,
  98 F.3d 604 (11th Cir. 1996) ............................................................................................... 3

*Pher Partners v. Womble (In re Womble)*,
   289 B.R. 836 (Bankr. N.D. Tex. 2003),
   *aff'd sub nom. Womble v. Pher Partners*, 299 B.R. 810 (Bankr. N.D. Tex. 2003),
   *aff'd sub nom. In re Womble*, 108 F. App'x 993 (5th Cir. 2004) .............................................. 9

*Picard v. Katz*,
   462 B.R. 447 (Bankr. S.D.N.Y. 2011) ...................................................................................... 2

*Sharp Int'l Corp. v. State Street Bank & Trust (In re Sharp Int'l Corp.)*,
   302 B.R. 760 (Bankr. E.D.N.Y. 2003),
   *aff'd*, 403 F.3d 43 (2d Cir. 2005) ............................................................................................. 7

*Tavenner v. Smoot*,
   257 F.3d 401 (4th Cir. 2001) ......................................................................................... 8, 9, 10

*U.S. Bank Nat'l Ass'n v. Verizon Comm'ns Inc.*,
   No. 3:10-CV-1842-G, 2012 WL 4050088 (N.D. Tex. Sept. 14, 2012) ..................................... 4

*West v. Abdelaziz (In re Abdelaziz)*,
   No. 10-51257, 2012 WL 359756 (Bankr. M.D.N.C. Feb. 2, 2012) ......................................... 10

*Zanderman, Inc. v. Sandoval (In re Sandoval)*,
   153 F.3d 722 (4th Cir. 1998) ................................................................................................... 8

**Statutes**

11 U.S.C. § 525 .................................................................................................................................. 4

11 U.S.C. § 546 ........................................................................................................................ 1, 2, 3, 4

11 U.S.C. § 547 .................................................................................................................................. 6

11 U.S.C. § 548 ............................................................................................................................... 6, 7

11 U.S.C. § 741 .................................................................................................................................. 1

N.C. Gen. Stat. Ann. § 39-23 .......................................................................................................... 6, 7

## PRELIMINARY STATEMENT

The Trust's Response concedes the essential facts, cannot dispute the black letter law, and fails to defend a legal theory that can never fit this situation. Fraudulent conveyance law's purpose is to root out efforts to obstruct creditors with secret transfers and sham sales. It is not an insurance policy against known business risks accepted in public, arms-length transactions among sophisticated, independent parties.

This Reply focuses on two dispositive defects in the Trust's claim for constructive fraudulent conveyance and one dispositive defect in the Trust's claim for actual fraudulent conveyance. The constructive fraudulent conveyance claim fails because (1) the underlying transfers fall within the safe harbor of 11 U.S.C. § 546(e) and (2) FairPoint received reasonably equivalent value as a matter of law when the Transaction—agreed to in January 2007—closed in March 2008. The actual fraudulent conveyance claim fails because there is no evidence—whether direct or in the form of "badges of fraud"—that anyone intended to "hinder, delay or defraud" any creditor. The Court should grant Verizon's motion for summary judgment.

## ARGUMENT

I.  **The Court Should Dismiss Count I For Constructive Fraudulent Conveyance.**

   A.  **The Transfers Are Not Avoidable As Constructive Fraudulent Conveyances Because They Were Settlement Payments Made By Financial Institutions.**

The Bankruptcy Code expressly precludes the avoidance as a constructive fraudulent conveyance of any transfer that is a "settlement payment" made by "a financial institution." 11 U.S.C. § 546(e). That "safe harbor" applies here.

   1.  *The Transfers Were Settlement Payments.*

The Bankruptcy Code's definition of "settlement payment" in 11 U.S.C. § 741(8) is "extremely broad" and includes "a transfer of cash [and] securities made to complete [a]

securities transaction." *Contemporary Indus. Corp. v. Frost*, 564 F.3d 981, 985 (8th Cir. 2009) (internal citations and quotations omitted).

The Trust concedes that it seeks to avoid transfers to Verizon of cash and securities.[1] "The $1.7 billion came from two sources"[2] comprised of "an approximate $1.16 billion payment to Verizon"[3] (the cash) and the Spinco Notes (the securities).[4] In exchange, Verizon transferred its equity interest in Telco LLC, which the Trust concedes were securities.[5] The transfers were settlement payments because they were cash and securities that completed a securities transaction.

The Trust nevertheless asserts that the transfers were "returns of capital"[6] as part of "Verizon's internal assets restructuring"[7] and that it would be "contrary to Section 546(e)'s purpose" to treat such transfers as settlement payments.[8] But courts have refused to limit the application of Section 546(e) based on arguments about the safe harbor's "purpose" unanchored from its statutory text. "[T]o deviate from what Congress has clearly and constitutionally decreed is a power the judiciary does not possess." *Picard v. Katz*, 462 B.R. 447, 452 (Bankr. S.D.N.Y. 2011) (interpreting Section 546(e)); *see also Enron Creditors Recovery Corp. v. Alfa, S.A.B. de C.V.*, 651 F.3d 329, 338 (2d Cir. 2011) (rejecting argument that transfer "did not implicate the systemic risks that motivated Congress's enactment of the safe harbor"); *In re*

---

[1] Trust Resp. at 4.
[2] *Id.*
[3] *Id.*
[4] *Id.* at 5.
[5] *Id.* at 27.
[6] *Id.*
[7] *Id.*
[8] *Id.* at 28 n.115.

*Plassein Int'l Corp.*, 590 F.3d 252, 258 (3d Cir. 2009) (rejecting limitation that settlement payments involve only publicly traded shares); *In re QSI Holdings, Inc.*, 571 F.3d 545, 550 (6th Cir. 2009) (same); *Contemporary Indus.*, 564 F.3d at 986 (rejecting argument that Section 546(e) applies only to public securities transactions); *Kaiser Steel Corp. v. Charles Schwab & Co.*, 913 F.2d 846, 850 (10th Cir. 1990) (declining to exclude transfers of consideration in a leveraged buyout from the definition of "settlement payment").

### 2. *The Settlement Payments Were Made By Financial Institutions.*

The Trust does not dispute that Mellon Bank (which transferred the cash) and U.S. Bank (which transferred the securities) each is a "financial institution" within the meaning of the statute. The Trust asserts that the transfers nevertheless were not "made by" the financial institutions because "[t]he financial institutions were involved as mere conduits."[9] The Trust cites just one appellate decision supporting that position, the decision of a divided panel of the Eleventh Circuit in *Munford v. Valuation Research Corp. (In re Munford, Inc.)*, 98 F.3d 604 (11th Cir. 1996) (per curiam). Every appellate court to decide the issue since *Munford* has rejected its reasoning because it ignores the plain language of § 546(e). The "plain language of § 546(e) … does not require a 'financial institution' to have a 'beneficial interest' in the transferred funds." *QSI Holdings*, 571 F.3d at 551 (rejecting *Munford* and *citing In re Resorts Int'l, Inc.*, 181 F.3d 505, 516 (3d Cir. 1999)); *Contemporary Indus.*, 564 F.3d at 986-87 (rejecting *Munford*); *Plassein Int'l*, 590 F.3d at 257-58 (rejecting *Munford*); *Enron Creditors Recovery*, 651 F.3d at 338 (adopting the reasoning of *QSI Holdings*, *Contemporary Indus.*, and *Plassein*).

---

[9] Trust Resp. at 30.

3

The Trust urges the Court to reject the majority view and instead follow the Eleventh Circuit because its analysis "should be the rule."[10] But, as the decisions of the Second, Third, Sixth, and Eighth Circuits note, it is for Congress, not the courts, to make such policy judgments. There is every reason to believe the Fourth Circuit will follow its sister courts that refuse to interpret "made by … a … financial institution" to mean anything other than what it says. "In interpreting a statute, a court should always turn first to one, cardinal canon of construction before all others: the plain meaning rule. We must presume that Congress says in a statute what it means and means in a statute what it says." *Ayes v. U.S. Dept. of Veterans Affairs*, 473 F.3d 104, 108 (4th Cir. 2006) (interpreting Section 525(a) of the Bankruptcy Code) (internal citations and quotations omitted).

In short, as another district court recently held on indistinguishable facts, Section 546(e)'s safe harbor bars the Trust's constructive fraudulent transfer claim. *U.S. Bank Nat'l Ass'n v. Verizon Comm'ns Inc.*, No. 3:10-CV-1842-G, 2012 WL 4050088 (N.D. Tex. Sept. 14, 2012).

> **B.  The Transfers Are Not Avoidable As Constructive Fraudulent Conveyances Because FairPoint Received Reasonably Equivalent Value As A Matter of Law.**

The Trust's constructive fraudulent transfer claim also fails because the exchanges that occurred among Verizon, Spinco, and FairPoint on March 2008 satisfied mutual, valid contractual obligations that those parties created in January 2007. Such transfers are not avoidable as constructive fraudulent conveyances. It is settled law that transfers made by a debtor that satisfy its previously-incurred legal obligations cannot be avoided as constructive fraudulent conveyances unless the obligations themselves were, when incurred, fraudulent conveyances. That rule controls here.

---

[10] Trust Resp. at 30-31.

4

The Trust does not dispute that Verizon, FairPoint, and Spinco entered into a legally binding set of contracts in January 2007.[11] Those agreements required the parties to close the Transaction following regulatory approval unless certain conditions occurred, none of which did.[12] The Trust presents no evidence that, when FairPoint and Spinco entered those agreements in January 2007, they were insolvent, that the agreements rendered them insolvent, or that the agreements provided them less than fair value given the value of Verizon's northern New England landline business at that time. Indeed, the Trust has never asserted in its complaints that the January 2007 contracts were fraudulent conveyances. Rather, the Trust argues that the economy and the landline business deteriorated by March 2008,[13] and therefore FairPoint did not receive assets worth $1.7 billion at closing.

Even accepting the Trust's March 2008 valuation of the landline assets for purposes of this motion, the Trust is incorrect that FairPoint/Spinco did not receive reasonably equivalent value because the Trust ignores the value that FairPoint/Spinco received by satisfying its legally binding obligation to close the deal. If FairPoint had decided in March 2008 to walk away from the deal and breach the January 2007 contracts, Verizon would have had a cause of action against FairPoint for damages. Taking the Trust's valuation at face value, Verizon's damages claim would have been the difference between the price that FairPoint was obligated to pay, $1.7 billion, and the Trust's assumed value of the assets as of March 2008. When FairPoint closed the Transaction in March 2008, FairPoint received two sources of value. First, it received the value of the Telco LLC securities. Second, it satisfied the liability it had to Verizon to close the deal. Those two sources of value add up to $1.7 billion no matter what assumption is made

---

[11] Trust Resp. at 4-5.
[12] Opening Br. at 21.
[13] Trust Resp. at 14.

5

about the value of the Telco LLC securities, since the value of the liability to close (the damages to which Verizon would have been entitled if FairPoint had breached) is just the difference between the value of the Telco LLC securities and the $1.7 billion owed under the January 2007 contracts.

Accordingly, the Trust's claim fails as a matter of law. A transfer is not constructively fraudulent if the debtor receives "reasonably equivalent value" in return. 11 U.S.C. § 548(a)(1)(B)(i); N.C. Gen. Stat. Ann. § 39-23.4 (a)(2). The term "value" includes both "property"—here the Telco securities—and "satisfaction … of a[n] … antecedent debt of the debtor"—here the obligation of FairPoint/Spinco to consummate in March 2008 the deal it had reached 14 months earlier. 11 U.S.C. § 548(d)(2)(A); N.C. Gen. Stat. Ann. § 39-23.3(a).

This rule of law disposes of the Trust's claim for constructive fraudulent transfer. FairPoint received reasonably equivalent value for the $1.7 billion transfer because it received both "property" and "satisfaction … of a[n] … antecedent debt" together worth $1.7 billion. This "blow[s] the constructive fraud theory out of the water. It is black letter law that a debtor's transfer of funds in satisfaction of a debt owed by the debtor is not constructively fraudulent." *Cox v. Ridgestone Bank (In re Cent. Illinois Energy Coop.)*, No. 09-81409, 2012 WL 5076288, *5 n.2 (Bankr. C.D. Ill. Oct. 18, 2012).[14]

Had FairPoint's transfers occurred within the statutorily-mandated time periods in 11 U.S.C. § 547(b)—not earlier than one year before the bankruptcy filing—the transfers might have been an avoidable preference to the extent that they satisfied the debt to Verizon before

---

[14] The Trust asserts that it can avoid summary judgment as to the state law constructive fraudulent conveyance claim because, if New York law applies, Verizon must have acted in good faith in accepting the transfers from FairPoint in March 2008. Trust Resp. at 25-27. Even if New York law applies, however, there is no evidence that Verizon acted other than in good faith when it accepted the transfers, since the transfers did nothing more or less than satisfy Verizon's legal right to close the Transaction.

6

FairPoint's other creditors. FairPoint did not file for bankruptcy until 18 months after the transfers. The Trust cannot extend its rights to recover preferences beyond the statutory maximum by relabeling its cause of action as a fraudulent transfer. It is a "fundamental principle that a preference—a payment by an insolvent debtor satisfying debts to one creditor at the expense of others—is not a fraudulent conveyance." *Sharp Int'l Corp. v. State Street Bank & Trust (In re Sharp Int'l Corp.)*, 302 B.R. 760, 780 (Bankr. E.D.N.Y. 2003), *aff'd*, 403 F.3d 43 (2d Cir. 2005).

II.     **The Court Should Dismiss Count II Because There Is No Evidence That Anyone Intended To "Hinder, Delay Or Defraud" A Creditor.**

The Trust's actual fraudulent transfer count requires that the Trust prove the existence of "intent to hinder, delay or defraud" a creditor. 11 U.S.C. § 548(a)(1)(A); *see also, e.g.*, N.C. Gen.Stat. § 39-23.4(a)(1). The Trust points to no direct evidence of actual fraud and fails to identify even one creditor that accuses FairPoint or Verizon of defrauding it. Instead, the Trust invokes the so-called "badges of fraud."[15] The Fourth Circuit has set out six such badges:

(1)     lack of consideration for the transfer,

(2)     family relationship between the parties,

(3)     the debtor's retention of the property for personal use,

(4)     the financial condition of the debtor before and after the transfer is suspicious,

(5)     a pattern or series of transactions after the onset of the financial difficulties or pendency of threat of suit by creditors, or

(6)     a suspicious chronology of events and transfers.

---

[15] Trust Resp. at 16-17, 22.

*Zanderman, Inc. v. Sandoval (In re Sandoval)*, 153 F.3d 722 (4th Cir. 1998) (per curiam) (unpublished table decision) (citations omitted); *accord Lafarge North America, Inc. v. Poffenberger (In re Poffenberger)*, 471 B.R. 807, 816 (Bankr. D. Md. 2012).

None of these circumstances exists here.

### A. There Was No Lack Of Consideration.

The hallmark of an actual fraudulent transfer is a lack of consideration. "To take an example, suppose a man owes $1000 to his creditor, but before he files for bankruptcy, he secretly 'sells' his mint-condition sports car to his brother for $500 in order to defraud his creditor-the classic, actually fraudulent transfer." *Batlan v. Bledsoe (In re Bledsoe)*, 569 F.3d 1106, 1114 (9th Cir. 2009).

Here, even using the Trust's low valuations, the Trust concedes that FairPoint received assets possessing significant value when it acquired the landline business in March 2008.[16] Further, as described above in Section I.B, FairPoint also satisfied its liability to Verizon to close the Transaction. Therefore, there was reasonably equivalent value (indeed, equal value) and no "lack of consideration" as a matter of law.

### B. There Was No "Family Relationship" Between The Parties.

Actual fraudulent transfers often are between blood relatives. In the Fourth Circuit case of *Tavenner v. Smoot*, for example, a debtor transferred the proceeds of a personal injury settlement to a corporation 100% owned by his wife and children. 257 F.3d 401 (4th Cir. 2001).

Here, the transfer was from one independent corporation to another. In March 2008, Verizon, a publicly held corporation, transferred its landline business in Maine, New Hampshire, and Vermont, through Spinco, to FairPoint, an independently held public corporation. In return,

---
[16] Trust Resp. at 15.

8

Verizon received cash and debt securities. This bears no resemblance to a transfer to a family member.

        **C.     There Was No Retention Of The Property For Personal Use.**

In "classic cases of fraud … an insolvent debtor transfers property for little or no consideration and retains control over the transferred property." *Krohn v. Cromer (In re Cromer)*, 214 B.R. 86, 93 (Bankr. E.D.N.Y. 1997). In *Tavenner v. Smoot*, for example, the debtor transferred cash to a family company, then "made several purchases using [the] funds … including cars for his wife and daughter and a motorcycle for his son." 257 F.3d at 405.

Here, it is undisputed that neither Spinco nor FairPoint retained the cash and securities transferred to Verizon. In addition, there is no dispute that Spinco's and FairPoint's creditors took full security interests in the landline assets that Verizon transferred in exchange, and that those assets later satisfied large amounts of creditor claims in FairPoint's bankruptcy.

        **D.     The Financial Condition Of The Debtor Was Not Suspicious.**

The typical actual fraudulent transfer occurs on the eve of bankruptcy. *See, e.g.*, *Pher Partners v. Womble (In re Womble)*, 289 B.R. 836, 855 (Bankr. N.D. Tex. 2003) ("[T]he transfer was an attempt to fraudulently diminish his personal estate knowing he was about to file for bankruptcy—a classic badge of fraud."), *aff'd sub nom. Womble v. Pher Partners*, 299 B.R. 810 (Bankr. N.D. Tex. 2003), *aff'd sub nom. In re Womble*, 108 F. App'x 993 (5th Cir. 2004). The idea is to shield assets from the press of creditor claims.

Here, it is undisputed that FairPoint's stock—the value of its assets in excess of its debt—had a market capitalization of hundreds of millions of dollars before the Transaction closed, and

9

that this equity value more than doubled after the Transaction.[17]  FairPoint was not on the eve of bankruptcy; it was 1½ years and a Great Recession later before FairPoint filed.

E.  **There Was No Financial Difficulty Or Threat Of Lawsuit.**

Threat of lawsuit and other financial difficulty often motivates actual fraudulent transfers. For example, in *Tavenner v. Smoot*, the debtor transferred $210,000 to his wife and sons via a family company after a court had found him liable in a lawsuit.  257 F.3d at 409; *see also Frierdich v. Mottaz*, 294 F.3d 864, 870 (7th Cir. 2002) (actual fraudulent transfer existed where debtor transferred $400,000 to wife, and received nothing in return, when he had over $8 million in debts and was defendant in five pending lawsuits).

Here, there was no financial difficulty at FairPoint motivating the transfers, and there was no company-threatening lawsuit pending against it.  The Trust does not contest that FairPoint management believed the transaction would benefit the company.

F.  **There Was No Suspicious Chronology Of Events And Transfers.**

There was nothing suspicious about the events and transfers at issue.  It is undisputed that there was no "attempt to keep the transfer a secret."  *West v. Abdelaziz (In re Abdelaziz)*, No. 10-51257, 2012 WL 359756, *3 (Bankr. M.D.N.C. Feb. 2, 2012).  To the contrary, both Verizon and FairPoint made numerous public filings with the SEC describing the Transaction, and there were multiple, open regulatory proceedings that lasted more than a year.  *Cf. Lippe v. Bairnco Corp.*, 249 F. Supp. 2d 357, 384 (S.D.N.Y. 2003) (where transaction was open and publicly reported "[a] reasonable jury could only find that this factor weighs heavily against a finding of fraud"), *aff'd*, 99 F. App'x 274 (2d Cir. 2004).  The motivations of every player were public,

---

[17] Opening Br. at 12.

scrutinized, and ultimately endorsed by the substantial valuation that the public capital markets placed on FairPoint following its completion of the Transaction.

## CONCLUSION

For these reasons, as well as those set forth in Verizon's opening brief, the Court should enter summary judgment in Verizon's favor on Counts I and II.

11
Case 3:11-cv-00597-FDW-DCK   Document 137   Filed 03/18/13   Page 15 of 18

Dated: March 18, 2013                    s/ Robert E. Harrington
Charlotte, North Carolina                Robert E. Harrington
                                         N.C. Bar No. 26967
                                         Andrew W. J. Tarr
                                         N.C. Bar No. 31827
                                         **ROBINSON, BRADSHAW & HINSON, P.A.**
                                         101 North Tryon Street, Suite 1900
                                         Charlotte, NC 28246
                                         Phone: 704-377-8387
                                         Facsimile: 704-373-3987
                                         rharrington@rbh.com
                                         atarr@rbh.com
                                         *Attorneys for Defendants*

*Of Counsel*

Philip S. Beck
Mark L. Levine
James B. Heaton, III
Brian C. Swanson
Abby M. Mollen
BARTLIT BECK HERMAN PALENCHAR & SCOTT LLP
54 West Hubbard, Suite 300
Chicago, IL 60610
Phone: 312-494-4400
Facsimile: 312-494-4440
philip.beck@bartlit-beck.com
mark.levine@bartlit-beck.com
jb.heaton@bartlit-beck.com
brian.swanson@bartlit-beck.com
abby.mollen@bartlit-beck.com

Philip D. Anker
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Phone: 212-230-8890
Facsimile: 212-230-8800
philip.anker@wilmerhale.com

12

## CERTIFICATE OF COMPLIANCE

Pursuant to the Case Management Order entered on March 21, 2012 in this action, counsel for Defendants certifies that the foregoing summary judgment reply memorandum is less than 3,000 words (excluding the case caption, table of contents, and any certificates of counsel) as reported by the word processing software in which it was prepared.

This 18th day of March, 2013.

s/ Robert E. Harrington
Robert E. Harrington

# CERTIFICATE OF SERVICE

I hereby certify that the foregoing was electronically filed today using the Court's CM/ECF system which will electronically notify the following counsel of record:

    Jonathan D. Sasser
    James M. Weiss
    **ELLIS & WINTERS LLP**
    PO Box 33550
    Raleigh, North Carolina 27636
    jon.sasser@elliswinters.com
    jamie.weiss@elliswinters.com

    J. Wiley George
    Robin Russell
    Charles B. Hampton
    Scott Locher
    **ANDREWS KURTH LLP**
    600 Travis, Suite 4200
    Houston, Texas 77002
    wileygeorge@andrewskurth.com
    rrussell@andrewskurth.com
    champton@akllp.com
    slocher@akllp.com

    Paul N. Silverstein
    **ANDREWS KURTH LLP**
    450 Lexington Avenue
    New York, New York 10017
    paulsilverstein@andrewskurth.com

This 18th day of March, 2013.

                                            s/ Robert E. Harrington
                                            Robert E. Harrington